MARIE E. BUCK, Executor of STEPHEN B. BUCK, Appellant, v. ST. LOUIS UNION TRUST COMPANY, CARRIE L. BUCK, Executor of RALPH S. BUCK, et al.

**Division Two, April 10, 1916.**

1. **BILL OF EXCEPTIONS: Bystanders.** Bystanders who may sign a bill of exceptions upon the refusal of the judge to do so, as the word is used in the statute (Sec. 2031, R. S. 1909), mean disinterested spectators, and do not include persons who were not present at the trial.

2. ————: **Wrongfully Signed: Withdrawal.** A bill of exceptions signed by persons who were not bystanders in contemplation of the statute, because they were not present at the trial, is no bill at all; and if filed or deposited with the clerk, may be withdrawn in order that it may be properly signed.

3. ————: **Bystanders: Jurors.** Members of the trial jury, under a reasonable construction of the statute, are bystanders, and may sign the bill of exceptions upon the judge's refusal to approve it.

4. ————: ————: **Affidavits: Part of Record.** Affidavits of bystanders in support of or against the truth of a bill of exceptions which the judge has refused to sign, taken and filed as required by section 2035, Revised Statutes 1909, are a part of the record on appeal and are subject to review in determining the truth of said bill.

5. ————: ————: ————: **Equal Number for Each Side.** Where the judge refused to sign the bill of exceptions because it was untrue, and a number of bystanders made affidavit to its truth and an equal number to the contrary, the trial judge will be upheld on appeal if said affidavits are so nicely balanced in their substantive facts as to present an irreconcilable conflict; but when the affiants in support of the bill, one of whom was the official stenographer, were disinterested and possessed opportunity to acquire full and impartial knowledge, and those in opposition were interested and possessed no such opportunity, the matters preserved in the bill are entitled to review.

6. **REMARKS OF COUNSEL: Will Contest: Attack on Contestant.** In a suit to set aside a will on the sole grounds of the mental incapacity of the testator and of undue influence exercised upon his mind, it is improper to permit counsel for proponents to say in his argument to the jury of and concerning contestant: "He was a spendthrift son. He never did anything for the support

of the family. He took from his mother's estate so far as he could, and his family had to leave the city to get rid of him, or to get rid of his attempts to get the family's money. He was not a success in business life." Whether true or false, the remarks were not relevant to the issues, and therefore unauthorized, and being a personal reflection upon contestant were improper. But they were not reversible error, where there is a preponderance of affirmative evidence that the testator was of sound mind and subject to no undue influence, and little substantial error to the contrary.

7. **WILL CONTEST: Evidence: Will of Testator's Father.** In a suit by a disinherited contestant to set aside his bachelor brother's will, made in 1909 in favor of his mother, sisters and another brother, on the ground of incapacity and undue influence, a will made by the father of testator and of contestant in 1875 is not admissible as having a tendency to disprove testimony offered by proponents and improperly admitted by the court to the effect that contestant was indebted to his mother, the fact being that such indebtedness was by way of an advancement by the mother to contestant on account of his prospective share in his father's estate.

8. **EVIDENCE: Improperly Admitted for One Side: Rebuttal By Other.** The admission of improper testimony on the one side does not authorize the admission of improper testimony in rebuttal on the other.

9. **CONDUCT OF JUDGE: Testy Remarks to Witness.** Frequent testy remarks made by the court to appellant while he was on the witness stand, though seemingly improper in the cold record, will not be held, in the absence of a showing of the conduct and manner of the witness, to be prejudicial error; especially, where the court cautioned the jury not to consider his words and manner towards the witness.

10. **REOPENING CASE: Discretion.** The reopening of the case after both sides have closed and a peremptory instruction has been offered by plaintiff, to permit the introduction of other testimony, is a matter largely within the discretion of the trial court, and does not constitute reversible error unless the discretion has been abused, to the injury of the losing party.

11. **WILL: Contrary to Testator's Understanding.** Where the will was drawn in accordance with the bachelor testator's instructions and he read it over and expressed satisfaction with it, and then was told by his lawyer that in the event the remaindermen survived the life tenant and died without issue the property would go under the statute to his brothers, and thereupon he requested that it be executed, the court cannot peremptorily instruct the jury to find for contestant on the ground

that the will was not testator's will. Besides, it is not necessary that testator have the knowledge of the will's scope and bearing possessed by his legal adviser.

12. ———: ———: Instruction: Contrary to Will Itself. Where the will of the unmarried testator cancels his brothers' debts, gives the property to his mother for life and in remainder to his sisters, and provides that if the mother survives the sisters and they die without issue the property is to be disposed of according to the mother's will, it is not error to refuse to submit to the jury the question whether it was the testator's intention to provide that, if his sisters survived his mother and died without issue, his property should go to his brothers. Such question should not be submitted to the jury, although testator was informed by his lawyer before executing the will that the property, in such contingency, would go to his brothers.

13. REVERSAL OF JUDGMENT: No Material Error. Notwithstanding errors were committed at the trial the judgment will not be reversed unless they materially affect the merits of the case.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*W. B. Thompson, Ford W. Thompson* and *Claud D. Hall* for appellant.

(1) The bill of exceptions which was prepared by the official court stenographer and presented to the court for allowance, was improperly rejected, and the bystanders' bill of exceptions deposited by plaintiff in the clerk's office, in consequence of the court's refusal to sign and allow said bill of exceptions, and permit the same to be filed, is complete and true and a proper bill of exceptions. The truth of said bill of exceptions is to be determined by this court from the affidavits filed in support and against the said bill of exceptions. Secs. 2030, 31, 33, 34, 35, 36, 37, R. S. 1909; State v. Jones, 102 Mo. 307; Simon v. Weipel, 10 Iowa, 505; Rowls v. State, 8 Smed. & M. (Miss.) 599; Dauson v. Louisville E. & R. Co., 6 Ky. L. R. 659; Schneider v. Hesse, 9 Ky. L. R. 814; Smith v.

Railroad, 55 Mo. 601; Blankenship v. Railroad, 48 Mo. 376; State v. Field, 37 Mo. App. 83; Norton v. Dorsey, 65 Mo. 376; State v. Snyder, 98 Mo. 562. (2) The court erred in failing to rebuke defendants' counsel for improper remarks made in his opening statement to the jury, to the effect that plaintiff was a spendthrift son, never supported his family, etc., for the reason that no such issues were in the case. Glover v. Railroad, 129 Mo. App. 575. (3) The court erred in reprimanding witness Stephen B. Buck without cause, just after the witness had been interrogated as to drawing of drafts on the firm, and just after the witness said: "I will ask you what those dates are." State v. Turner, 125 Mo. App. 21; Landers v. Railroad, 134 Mo. App. 80; State ex rel. v. Rubber Co., 149 Mo. 181; Dryfus v. Railroad, 124 Mo. App. 585; Steltemeyer v. Barrett, 115 Mo. App. 323; Levels v. Railroad, 196 Mo. 606; Rose v. Kansas City, 125 Mo. App. 231; Bennett v. Harris, 68 N. Y. Misc. 503; McDuff v. Evening Journal Co., 84 Mich. 1. (4) The court erred in not giving to the jury a peremptory instruction, offered by the plaintiff directing the jury to find a verdict in favor of the contestant and that the will offered was not the will of the testator. (a) If in their efforts to prove the due execution of the will, the proponents themselves show that the paper offered is not what the testator was made to believe it was when he signed it, it cannot be adjudged to be his will, even in the absence of an averment to that effect in the petition of the contestants. Cowan v. Shaver, 197 Mo. 212; Bradford v. Blossom, 207 Mo. 225. (b) The evidence of John F. Lee offered by the proponents of the will, conclusively showed that the will as drawn by him for the testator is not what the testator was made to believe it was when he signed it, and the peremptory instruction to the jury, to find that the will offered is not

the will of the testator, should have been given.    (c) In a will contest, where the issue is *devisavit vel non,* parol evidence is admissible for the purpose of proving or disproving any fact relative to that issue; but parol evidence is not admissible in a suit to reform a will, either for the purpose of adding to or explaining the clear and unequivocal language of a will; the reason therefor being that a will is required to be in writing, and that a court will not make a will.  1 Jarman on Wills (6 Ed.), 484; Earl of Newbury v. Countess of Newbury, 5 Mad. 364; Fulton v. Andrew, 44 L. J. P. 17.

*Charles M. Polk* for respondents.

(1) The refusal of the circuit judge to sign appellant's bill of exceptions was proper, as it was untrue and incomplete.  (a) Persons not present at the trial of the cause of action are not bystanders within the meaning of Sec. 2031, R. S. 1909, and a bill of exceptions signed by such persons is not a proper bill of exceptions.  Heidenheimer v. Thomas, 63 Tex. 287; Houston v. Jones, 4 Tex. 172; Williams v. Pitt, 38 Fla. 168.  (b)  Neither are jurors who participated in the trial of the cause of action bystanders within the meaning of our statutes.  Oil Co. v. Akins, 140 S. W. (Ark.) 739; Snyder v. Hesse, 9 Ky. L. R. 814. (c)  After the plaintiff had deposited the bill of exceptions in the circuit court, it could not be added to without leave of court.  (d)  As the bill of exceptions does not correctly set forth the evidence at the trial, it should not be considered here; and there being no error in the record proper, the judgment should be affirmed.    State v. Jones, 102 Mo. 308;    State v. Hronek, 94 Mo. 84.  (2)  Counsel have the right, in their opening statements, to state in good faith their claims as to both the law and the facts, in so far as is necessary to give the jury an understanding of

their theory of the case, and where the remarks concerned facts which the counsel expected to prove and did prove, which would naturally and did influence the relationship of the testator to the person who claimed that he was unfairly deprived of his bounty, such remarks were proper. Such questions must be largely left to the sound discretion of the trial court. It is only when an abuse of the discretion is shown that the appellate court is justified in interfering. 40 Cyc. 1331; Wilkerson v. McGhee, 153 Mo. App. 355; Mowry v. Norman, 223 Mo. 471; Meier v. Buchter, 197 Mo. 68; Thompson v. Ish, 99 Mo. 172. (3) The testimony shows conclusively that the testator was of sound and disposing mind and memory, and that he was not under the undue influence of any one. (a) The testimony of the attorney who drew the will shows conclusively that the will was drawn in accordance with the instructions of the testator. (b) There is no testimony which shows that the testator misunderstood the language of the will. (c) The testimony of the attorney who drew the will merely shows that the testator knew he was not absolutely excluding his brothers from a share in the *corpus* of his estate, in the event that a partial intestacy should occur through the death of the sisters without descendants surviving. (d) No error was committed by the court in refusing instructions, the effect of which would have allowed the jury to consider an alleged mistake about a matter outside of the will. 40 Cyc. 1418, 1942; Hurst v. Von de Veld, 158 Mo. 247; Schneider v. Schneider, 54 Mo. 501; Sec. 544, R. S. 1909; Couch v. Eastham, 27 W. Va. 796; Bradford v. Blossom, 207 Mo. 226. (e) It is not necessary for the testator to be able to fully understand the scope and bearing of the will as prepared by his attorney. Couch v. Gentry, 113 Mo. 256; Kishman v. Scott, 166 Mo. 228; Young v. Ridenbaugh, 67 Mo. 586. (f) The will was executed by a competent testa-

tor not under any undue influence, and was not the result of any fraud practiced upon the testator, therefore neither a mistake of law or of fact in the mind of the testator, as to the effect of what he actually and intentionally did, will avail to set aside the will. Bradford v. Blossom, 207 Mo. 226; Comstock v. Hadlyme, 8 Conn. 254; Barker v. Comins, 110 Mass. 488; Walizi v. Walizi, 55 Pa. St. 242.

WALKER, J.—This was an action instituted in the circuit court of the city of St. Louis by Stephen B. Buck to contest the will of his brother, Ralph S. Buck, on the ground of the mental incapacity of the latter and that undue influence had been exerted upon him to induce him to make the will. Upon a trial a judgment was rendered for defendants, from which plaintiff appealed. Pending the motion for a new trial the original plaintiff, Stephen B. Buck, died, and the suit was revived in the name of the executrix of his estate, Marie V. Buck, who is the appellant here.

The judge of the circuit court refused to sign the bill of exceptions submitted by appellant on the ground that the same was untrue in that it failed to insert in the testimony of the contestant, Stephen B. Buck, an answer alleged by the judge to have been made by the contestant while on the witness stand, to this question: "I will ask you what those dates are?" to which the witness replied "he would not answer such a fool question." Upon the refusal of the trial judge to sign the bill, appellant secured the signatures of three bystanders thereto and again submitted same to the judge, who refused to sign it on the ground that it was untrue, as above stated, and for the further reason that the so-called bystanders stated that they were not present at the trial and did not know what transpired during its progress. Appellant thereupon secured the signatures of three

of the jurors who had participated in the trial of said cause and had rendered the verdict adverse to appellant and submitted the bill thus signed to the judge for his signature. He refused to sign same on the ground that it was untrue, as before stated, and said bill having been deposited with the clerk as originally signed, that appellant was not authorized in withdrawing same and having other signatures attached thereto; and for the further reason that said jurors were not bystanders within the meaning of the statute (Sec. 2031, R. S. 1909) and hence said bill had not been signed as required by law. Appellant filed said bill signed by said jurors with the clerk of the circuit court and proceeded under the authority of section 2034, Revised Statutes 1909, to procure and file the affidavits of five persons to support the truth of said bill, and respondents procured and filed counter affidavits of five persons against the truth of same.

The testator died in the city of St. Louis, November 11, 1910. His will, made in said city February 27, 1909, omitting formal introductory paragraph, closing testimonial, his signature and the certificate and signatures of attesting witnesses, is as follows:

"Item 1. I desire that all my just debts, should I leave any, shall be paid by my executors hereinafter named as soon as may be practicable after my decease.

"Item 2. I make no provision in this, my will, for my brothers, Stephen B. Buck and Charles H. Buck, but it is my will and I direct that under no circumstances shall any claim be asserted or brought by my estate against them, or either of them, for moneys I have lent to them, or either of them, during my lifetime, and any and all evidences of debt held by me, or my estate against them, or either of them, at the time of my death, shall be cancelled.

"Item 3. I give and bequeath to my mother, if she survives me, or if she predecease me, then to my sister, Carrie L. Buck, all my wearing apparel, watch and other jewelry, all my books, household furniture, plate, glass and chinaware, pictures and bric-a-brac, absolutely.

"Item 4. I give and bequeath to my nephew and namesake, Ralph B. Buck, the sum of two thousand dollars, which I desire my executors shall pay over to the St. Louis Union Trust Company, to be invested, managed and controlled by that company during the minority of my said nephew, and during his said minority the net income or profits arising from said principal sum of two thousand dollars, shall be added to the principal, and the whole amount of principal and accumulated income shall be paid over to my said nephew by said Trust Company when he reaches the age of twenty-one years, to be his absolutely.

"Item 5. I give, devise and bequeath to the said St. Louis Union Trust Company all the rest and remainder of the property, real, personal or mixed, of which I may be possessed, or in which I may have any interest, or over which I may have any power of appointment or disposition at the time of my death, upon trust, however, that the said company will hold, manage, control, invest and reinvest the same in such manner as it may deem best, and after deducting all proper expenses connected with the management and preservation of said trust estate, including a proper commission to said trustee for its services, it shall pay over the net income arising therefrom equally to my dearly beloved mother, Caroline M. Buck, and my said sister, Carrie L. Buck, as long as they shall both live and my said sister, Carrie, is unmarried, and after the death of one of them, or if one of them predeceases me, then from my death until the death of the survivor, all of said net income shall be paid over to such survivor; provided, however, that if my said

sister, Carrie, should at any time be married when otherwise under this clause she would be entitled to any income, all of such income shall be payable to my mother so long as she shall live. At any time after my death, when my mother is dead, and my said sister, Carrie, is married, or a widow, I desire that the net income arising under this clause shall be paid equally to my said sister, Carrie, and my sister, Lillie B. Avis, so long as they both shall be alive, and upon the death of one of them, the whole of said net income shall be payable to the survivor until she dies, and upon the death of the survivor, the body of said trust fund shall be divided among the descendants of my said sisters, should they both leave descendants, or among the descendants of the sister leaving descendants if but one leaves descendants, such descendants taking *per stirpes* the share his, her or their parents would have received if then living.

"I desire that there shall be no sale of any property of my estate or reinvestment of the proceeds thereof without the consent of either one or the other of my two friends, John F. Lee, and Dr. Josephus R. Lemen, both of said city of St. Louis, so long as either of them may reside in said city.

"If my mother should survive me and survive my two sisters, I desire that my estate shall be distributed according to the terms of her last will and testament, should she leave one, and all prior clauses in this, my will, are to be construed with reference to this provision.

"I appoint my said sister, Carrie, and the St. Louis Union Trust Company the executors of this, my will, and desire that neither shall be required to give any bond for the performance of her or its duties as executor hereunder, and I authorize my executors during the administration upon my estate to sell, invest and reinvest any portion of my property

with the consent of either one of my said friends, as above provided.''

I.   Upon the refusal of the trial judge to sign the bill of exceptions on the ground that it was not true, the procuring of the signatures thereto as **Bill of** bystanders of three persons who had not **Exceptions** been present during the trial was not a compliance with the literal meaning or intendment of the statute, which provides that if a judge refuse to sign a bill of exceptions it may be signed by three bystanders who are respectable inhabitants of the State, and the court or judge in vacation shall permit every such bill, if true, to be filed in court or in the clerk's office if ordered in vacation, within the time specified in the order of the court.   [Sec. 2031, R. S. 1909.]   Bystanders, as used in this statute, mean disinterested spectators (State v. Jones, 102 Mo. 305) and persons not present cannot properly be so classified.

The correctness of this definition is rendered more evident when we seek to ascertain the purpose of the statute.   The signing of the bill by the trial judge gives a badge of verity to the proceedings when transmitted to the appellate court; failing to secure this, the law, in its wisdom, does not leave the appellant without remedy in perfecting his appeal, but provides, when reasonably construed, that the truth of the bill may be attested by three disinterested persons who were present during that part of the trial the transcript of the proceedings of which are alleged to be untrue by the trial judge.   In the instant case, therefore, the requirement of the statute, whether measured by its words or the purpose it was intended to effect, was not meant by the securing of signatures to the bill of persons unfamiliar with the proceedings of the trial alleged by the judge to be untrue as shown by the transcript.   This being true, the ruling of the trial court in this regard was not error.

However, within the time granted for the filing of the bill the appellant withdrew the same from the clerk's office and procured the signatures thereto of three of the jurors who had sat in the trial and had joined in a verdict adverse to the appellant. As stated, the bill thus signed was submitted to the trial judge for his signature. He refused to sign same. We have set forth his reasons therefor in the preliminary statement, but for emphasis repeat them here, as follows: first, because the bill was untrue for the reason heretofore noted; second, that appellant having filed and deposited the bill in the clerk's office as originally signed was without authority to withdraw or in any wise change same; and, third, because jurors are not bystanders within the meaning of the statute.

The ground of the first objection we will discuss later. There is no merit in the second. If the bill was improperly signed, as contended by the trial judge and as we have held, it was no bill and its attempted filing with the clerk had no more binding force than if appellant had deposited and secured the filing of any other memorandum or private paper. Filed without authority, it could be withdrawn at pleasure. It was so withdrawn, and within the time granted by the trial court for the filing of the bill the signatures of the jurors were obtained to same and it was submitted to the judge for his signature with the result stated.

There is a dearth of authority upon the subject of the right of jurors to sign a bill of exceptions as bystanders. One case (Dawson v. L. & N. R. R. Co., 13 Ky. Opin. l. c. 229) from the Kentucky Court of Appeals briefly holds that the affidavits of two members of the jury to a bill of exceptions gotten up in lieu of one signed by the judge who tried the case is sufficient under the statute of that State. A later case in the same court (Schneider v. Hesse, 9 Ky. L.

Rep. 814), while simply holding that the signature of one member of a jury will not suffice to attest a bill of exceptions, intimates by implication that there is a question whether a juror can be regarded as a bystander under the laws of Kentucky. These cases, therefore, throw no light upon the subject and would not be noticed except that they have been cited pro and con by the parties hereto. Here and elsewhere, without burdening this opinion with the citation and discussion of cases, it has been held, under statutes similar in all their material features to that of this State, that an interested party, whether a litigant, an attorney or a witness, cannot be regarded as a bystander. These rulings, even by analogy, afford no aid. We are therefore relegated to the general rules of interpretation to determine this question.

The express requirement of the statute (Section 2031, supra), and it has no other limitation, is that those who sign a bill of exceptions as bystanders shall be respectable inhabitants of the State, and the implied requirement, deduced, as we have shown, from the purpose of the law, is that such bystanders shall be disinterested and possess such a knowledge of the proceedings as will enable them to intelligently certify to the correctness of the bill. If such bystanders are jurors who have sat in the trial of the case, it must have been shown as a prerequisite to their sitting as such that they are disinterested; the nature of their duty necessitates a familiarity with the proceedings of the trial, the truth of which they are consequently enabled to attest as such bystanders. The fact that they have rendered a verdict in the case from which the appellant is seeking to appeal affords no ground of complaint, because such verdict, under their oaths, is a disinterested finding.

Jurors, therefore, under a reasonable construction of the statute, may be said to meet the measure of

qualifications necessary to authorize them to sign a bill of exceptions as bystanders.

Further than this,.another matter, of a practical nature, properly influences this construction. A law, when the plain meaning of its words is not misconstrued.and its intendment is not perverted, is to be so interpreted as to fully effect the purpose of its enactment. The meaning and the purpose of the statute under review is to aid in the perfecting of appeals. It is a fact well known to every lawyer of general experience that in the trial of cases in the circuit courts of our cities the attendance is more often than otherwise limited to the officers of the court, the litigants, witnesses and jurors. Under this state of facts, if a case arises, as it has here, where the trial judge refuses to sign the bill of exceptions, unless jurors be held qualified to sign same as bystanders, the perfecting of an appeal becomes impossible and the statute is rendered nugatory. Such a condition of affairs was not within the contemplation of the Legislature. The law was enacted not that its practical application might be limited to a part but extended to all litigants who come within its provisions; it is remedial in its nature, as are all statutes in regard to appeals (Beechwood v. Railroad, 173 Mo. App. 371; State ex rel. v. Taylor, 134 Mo. App. l. c. 440), and as such should be liberally construed. So construed it authorizes, as we have indicated, the signing of bills of exceptions by jurors as bystanders.

The requirement of the statute (Sec. 2033, R. S. 1909) in regard to the filing of the bill signed by jurors as bystanders was complied with. Upon the refusal of the trial judge to permit the bill of exceptions so signed by jurors to be filed, as evidenced by his certificate thereto attached, the respective parties hereto, in conformity with section 2034, Revised Statutes 1909, procured affidavits, five in number on each

267 Mo. 42

side, in support of and against the truth of said bill. Such affidavits, taken and deposited, as required by section 2035, Revised Statutes, 1909, are a part of the record herein and hence properly subject to review in determining the truth of said bill. [State ex rel. v. Taylor, 134 Mo. App. 430.] Equal in number on each side, if said affidavits were so nicely balanced in the substantive facts set forth in each as to present an irreconcilable conflict, we would be inclined, as by precedent authorized (State v. Jones, supra), to hold that the certificate of the trial judge should prevail.

However, we do not find this state of facts to exist. The affidavits in support of the appellant's bill were made by three members of the trial jury, the court stenographer who took the entire notes of the testimony, and an attorney who was present during the trial as a guradian *ad litem* for a minor defendant. The counter affidavits in support of the objections to the bill consisted of one by the attorney who had theretofore filed an affidavit in support of same and one by W. H. Kribben, a witness for the respondents, and three others, one by Carrie L. Buck and another by Lillie B. Avis, respondents, and another by Harry C. Avis, husband of the latter. Discarding, as we are authorized to do, the affidavits of the attorney who, while attesting the correctness of the bill qualified same in his counter affidavit, we have remaining four affidavits on each side. With as little invidious comparison as the nature of the subject will permit or a measuring of the direct statements of one of these sets of affidavits with what is termed in the other as the "best recollections of the affiants," we find that those filed in support of the bill, as submitted by the appellant, are fairly entitled to the greater credence. This finding does not involve any question of veracity in any affiant, but depends for its force upon the nature and substance of the affidavits, the relation which the affiants sustained to the

proceeding, their interest or lack of interest in same, and their opportunities, by reason of their relation to obtain a full, free and impartial knowledge of the facts transpiring during the trial. The three jurors found it necessary in the discharge of their duty to give careful heed to what was occurring; and a like duty devolved upon the court stenographer to enable him to carefully preserve a record of the proceeding. He not only testifies generally as to the truth of the bill submitted by appellant, but incorporates in his affidavit, in its own words, the occurrence out of which grew the controversy between the trial judge and the appellant as to the truth of the bill. The record of this occurrence as set forth in said affidavit attests the correctness of the bill as submitted by the appellant, and we feel inclined, under all of the facts, to give it much weight in determining the probative force of these affidavits.

While the presence at the trial of those who made the counter affidavits was not incumbent upon them as a duty but depended wholly upon their inclination and interest, we will presume that they were present during the entire proceeding. The relations they sustained to the case was a sufficient incentive to excite their interest in the matters occurring during the trial and thus induce them to be present;. but the very nature of their respective interests tended to prevent them from giving that careful and impartial consideration to the facts as they occurred necessary to enable them to remember such facts clearly. The standard of human testimony is highest when given free from the promptings of personal interest and simply in the discharge of a sworn duty. Much, therefore, as we may be disinclined to hold counter to the conclusion of the trial court in a matter of this nature, we feel impelled, under the facts in this case, to find that the affidavits filed in support of the bill of exceptions, as submitted by the appellant, should

be given the greater weight and therefore that the matters preserved in said bill are entitled to a review upon appeal.

II. The trial court, over the objection of the appellant, permitted counsel for respondents in his opening statement to the jury to make these remarks concerning the contestant: "He was a spendthrift son. He never did anything for the support of the family. He took from his mother's estate so far as he could, and his family had to leave the city of St. Louis to get rid of him, or to get rid of his attempts to get the family's money. He was not a success in business life."

Remarks of Counsel.

The issues clearly defined were as to the mental capacity of the testator to make a will and undue influence. While counsel in their opening statements to juries are authorized to state in good faith their claims as to the law and the facts so far as same are necessary to enable the jury to understand the case (40 Cyc. 1331), under no theory of this case, with any proper regard for the rules of evidence, were these remarks permissible. They constitute nothing more than personal reflections upon the character of the contestant, and whether true or false were highly improper. The wide latitude given in the admission of testimony in cases of this character (Mowry v. Norman, 223 Mo. l. c. 470) does not authorize the introduction in evidence of wholly irrelevant matter prejudicial in its nature, and hence the remarks of counsel stating the nature of such proposed testimony are for a like reason unauthorized. As was pertinently said in another jurisdiction (Rickabus v. Gott, 51 Mich. 227), "a trial judge must repress needless scandal and gratuitous attacks upon the character of parties" to proceedings.

III. The offer made by appellant to introduce in evidence the will made in 1875 of Charles H. Buck, the

father of the contestant and of the testator, was prop-
erly refused. Its submission to the jury

**Rulings as to Testimony.** would have served no proper purpose in
aiding them to determine the issues pre-
sented by the pleadings. Abstruse argu-
ments pro and con as to whether the will of Charles
H. Buck created a precatory trust have no place in
determining the admissibility of this instrument. To
argue that it should have been admitted to show that
the contestant had a right to share in his father's
estate and to receive money from his mother under
a clause which authorized her to distribute the prop-
erty given her by this will between her children and
those of Charles H. Buck, serves no other purpose
than to emphasize the fact that the said will is entirely
foreign to any matter at issue here, and hence the
argument in favor of its admission, when fairly an-
alyzed, carries its own refutation with it; nor will it
avail as a reason for the admission of this instrument
that its introduction would have tended to disprove
testimony offered by respondents and admitted by
the court that the contestant was indebted to his
mother and that such indebtedness was by way of
advancement by her to him on account of his prospec-
tive share in his father's estate. While the testimony
thus permitted to be introduced by respondents was
wholly inadmissible and should have been excluded,
the exclusion of testimony offered on the part of the
appellant to disprove same was not error. This is
true under the rule that the admission of improper
testimony on the one side does not authorize the ad-
mission of improper testimony in rebuttal on the
other. As was tersely said by the Supreme Court of
Georgia in discussing this question, "there can be no
equation of errors." [Stapleton v. Monroe, 111 Ga.
848.] An examination of the numerous authorities
on this subject discloses a marked contrariety of
opinion in the different jurisdictions; but, under the

particular facts in the instant case, where the appellant duly objected to the improper testimony offered by respondents and his objection was erroneously overruled, he cannot be heard to insist upon the admission of improper testimony in rebuttal, because his objection will save him on appeal and he needs no other protection. [Shaw v. Roberts, 2 Starkie, 455; Stringer v. Young, 3 Pet. (U. S.) l. c. 336; Railroad v. Woodruff, 4 Md. 242, 255; Mitchell v. Sellman, 5 Md. 376, 385; Woolfolk v. State, 81 Ga. 551, 558; Stapleton v. Monroe, supra; Wickenkamp v. Wickenkamp, 77 Ill. 92, 96; Maxwell v. Durkin, 185 Ill. 546, 550.]

The offer of appellant to prove that the business of the manufacturing company of which the testator was the manager at the time the will was made, was so systematized that it required no ability on the part of the testator to manage same, was properly refused. If admitted, the fact would have possessed no probative force. Its truth may be conceded, yet it does not afford proof that the testator was incapable of making a will.

IV. The frequent testy remarks made by the court to the contestant when the latter was on the witness stand seem, in the cold record, to have been improper; it is fair to say, however, in the absence of knowledge of the manner and conduct of the contestant not disclosed except as indicated by the reproof of the court, that a criticism of the court's conduct may be unwarranted. In any event the frank cautionary statement of the court to the jury that they were not to consider the court's words and manner toward the witness in determining the case, as same were not intended in any wise to influence their action but were simply directed to the witness, is sufficient to indicate

Conduct of the Court.

that the jurors could not reasonably have been influenced by the court's conduct.

Complaint is made of the action of the trial court in reopening the case to permit a witness to testify on behalf of respondents after the testimony had been closed on both sides and a peremptory instruction had been asked by appellant. Under our practice the reopening of a case after both sides have closed to permit the introduction of other testimony is a matter largely within the discretion of the trial court, and unless it appears that such discretion has been abused in that injury has resulted therefrom to the party complaining it will not be interfered with. [Joplin W. W. Co. v. Joplin, 177 Mo. l. c. 531; Roe v. Bank of Versailles, 167 Mo. l. c. 426; Drug Co. v. Grocer Co., 179 Mo. App. 676.]

The reopening of the case in this instance was not an abuse of the court's discretion. Especially is this true since it appears that the testimony of the witness was in no material particular different from that given by him when first testifying. The appellant, therefore, has no substantial ground of complaint in this regard.

V. The peremptory instruction requested by appellant and refused by the court directed the jury to find a verdict in favor of the contestant for the reason **Instructions.** that the will offered was not the will of testator. This request is based upon the assumption that it had been shown by respondents (the proponents) that the paper offered in evidence as the will was not what the testator was made to believe it was when he signed it, and cannot therefore be adjudged to be his will, despite the absence from the petition of an averment to that effect. The construction placed upon the testimony of John F. Lee, who drew the will, forms the basis for appel-

lant's contention.   The substance of this testimony in relation to this matter is as follows:

"I prepared the will and by appointment he (the testator) came to my office, and after he had read the will over he said 'it was satisfactory.'  He got up and I hesitated a moment and then said to him: 'Mr. Buck, that's the will as you asked me to draw it. Now I think it is my duty to tell you if you leave it as it is written and your sisters die without children your property will go to your brothers.  I don't know whether that is what you want or not, but that is what that will is and I think I ought to call your attention to it.'  He put his hand on my desk, by which he was standing, was silent for about five seconds, when he said, 'Let it go.' I then called in the witnesses and the will was executed."

There is not a particle of evidence here to show that the testator did not fully understand the will or that it was in any wise different from the manner in which he directed it to be drawn.  He read the will and declared it was satisfactory.  Whether he understood before it was explained to him what would be the disposition of his property under the law of descents and distributions in the event of his sisters surviving his mother and dying without issue, the record is silent.  This much is clear: when fully informed as to the effect of the will in the event of the contingency mentioned, he reasserted his approval of it in curtly declaring, after listening to Mr. Lee's explanation, "Let it go."  This is sufficient to affirmatively show that the testator not only understood, as he doubtless did before the explanation, the terms of the will, but its effect in the event of the death of his sisters without issue.  However, if the will expressed his purpose, as it unquestionably did or he would not have approved it, this was all that was necessary.  While a testator should have a reasonable understanding as to how he desires his will to take

effect, it is not necessary that he should have that knowledge of its scope and bearing possessed by his legal adviser. [Kischman v. Scott, 166 Mo. l. c. 228; Couch v. Gentry, 113 Mo. l. c. 256.] Under the facts the trial court was justified in refusing the peremptory instruction requested by appellant.

The appellant, in two instructions which were refused, asked the court to submit to the jury the question as to whether it was not the intention and purpose of the testator to provide, if his sisters survived his mother and died without issue, that his property should go to his brothers. Much that we have said in support of the action of the trial court in refusing to give the peremptory instruction applies with equal force here. We have shown that the testator read and approved the will and an analysis of same will disclose that it cannot be so construed as to authorize the giving of the instructions in question. As was explained to the testator before he signed the will, its effect in the event of the sisters surviving the mother and dying without issue, was to leave the property subject to the disposition of the statute, in which event the brothers would take by descent and not by devise, as contended by the appellant. [Hurst v. Von De Veld, 158 Mo. l. c. 247; 40 Cyc. 1942.] The incorrectness of appellant's contention that it was the testators purpose to leave the corpus of his estate to his brothers in the event of the contingency mentioned is clearly shown by the terms of the will itself. Item 2 of same cancels the brothers' debts to testator, and Item 5 provides that if his mother survives his sisters the estate is to be disposed of as may be provided by her will. Both by express reference and direct exclusion, therefore, it is shown that the testator did not intend that his brothers should have the corpus of the estate in any event. There is no ambiguity in this will, and the testator's intention may be readily determined therefrom without the aid of

extrinsic evidence. Thus determined, it becomes evident that the trial court did not err in refusing the instructions requested.

VI. We have carefully reviewed the facts and do not find that the issues submitted by appellant have been proved; on the contrary there is a preponderance of affirmative evidence that the testator was of sound mind and subject to no undue influence. In fact, there is little substantial evidence to the contrary. This is ample to establish the validity of the will. Under this state of facts the errors we have noticed as having occurred during the trial must be held not of sufficient moment to work a reversal of the judgment of the trial court. [Reynolds v. Reynolds, 234 Mo. l. c. 153; State v. Vickers, 209 Mo. l. c. 34; Railroad v. Sloop, 200 Mo. l. c. 219.]

*In Conclusion.*

The action of a trial court, as well as the review of same upon appeal, should be to secure to the parties substantial justice. This is what the statute (Sec. 2082, R. S. 1909) means when it admonishes us that we should not reverse a judgment of any court unless we believe that error has been committed which materially affects the merits of the case. Without this statute, which is purely directory, yet nevertheless entitled to observance, we would not be inclined to reverse this case in the absence of any substantial evidence to sustain the contentions of the appellant simply that the errors noted might be rectified. We have all the facts before us. The decree is for the right parties and we will, in the exercise of a wholesome discretion, let it stand. It is so ordered. All concur.