**Barbara DANIELS, Plaintiff-Respondent,**

v.

**Carolyn Sue Thomas DILLINGER,
Defendant-Appellant,
and
Lee Payton and Donald Houston, Defendants.**

No. 8791.

Springfield Court of Appeals,
Missouri.

Aug. 26, 1969.

Edwin C. Haseltine, Donald E. Bonacker, Springfield, for defendant-appellant.

Thomas G. Strong, Farrington, Curtis & Strong, Springfield, for plaintiff-respondent.

TITUS, Judge.

Shortly after midnight on October 17, 1965, in Springfield, Missouri, Barbara Daniels, the plaintiff, was a passenger in a Dodge driven by Donald Houston when it was struck successively at the intersection of Glenstone and Seminole Streets by an Oldsmobile operated by Lee Payton and a Chevrolet driven by Carolyn Sue Dillinger. Plaintiff sued the three drivers in the Circuit Court of Greene County, but settled her claim for damages against Payton for $10,000 prior to trial. In accordance with

the jury's verdict, the circuit court entered judgment for plaintiff against Houston in "the sum of $25,000.00 less $10,000.00 paid by Mr. Lee Payton, or the sum of $15,000.00," and in favor of defendant Dillinger "on Plaintiff's petition." Thereafter plaintiff was granted a new trial against Dillinger on the issue of liability only, on the sole ground that plaintiff had been prejudiced by testimony regarding her consumption of intoxicants. Neither plaintiff nor Houston appealed. Dillinger, as the lone appellant, asserts a new trial is not warranted because her motion for a directed verdict should have been sustained and the examination of plaintiff apropos her imbibing was not error for reasons to be detailed presently. Plaintiff, by not appealing, has permitted the maximum amount of her possible recovery against Houston, or Houston and Dillinger, to become fixed at $15,000. Therefore the amount in dispute upon this appeal does not exceed $15,-000, and we have jurisdiction. V.A.M.S. Const. art. 5, §§ 3 and 13; V.A.M.S. § 477.-040; cf. Joffe v. Beatrice Foods Company, Mo., 335 S.W.2d 34, 35(1, 2).

■ Dillinger's position as to the first point is not that the evidence was insufficient to submit to the jury the issue of her negligence, but rather that there was not. enough substantial evidence to show that her negligence was a proximate cause of plaintiff's injuries. This is predicated upon Dillinger's asseverations that plaintiff was not in the Dodge when it was struck by the Chevrolet and that the Chevrolet did not otherwise contact plaintiff to cause her any harm. When a defendant who has had a verdict appeals from an order granting plaintiff a new trial (V.A.M.S. § 512.-020) on the ground there was not sufficient evidence to sustain a verdict for the plaintiff or to justify the submission of plaintiff's case to the jury, we are subject to the requirement that we view the evidence and the permissible inferences in the light most favorable to the plaintiff. Walsh v. Phillips, Mo., 399 S.W.2d 123, 125(2);

Walker v. Niemeyer, Mo., 386 S.W.2d 87, 89(1).

Ten people occupied the three involved vehicles but, with the exception of plaintiff who had no recollection of the accident or of the events immediately before and after, none of them testified at the trial. Admissions against interest, as contained in the depositions of Houston and Dillinger, were read to the jury by plaintiff. Defendants offered no evidence after plaintiff had rested.

Glenstone is a north-south thoroughfare which Seminole intersects at right angles. The posted speed limit in the area of the intersection was 40 miles per hour. Eyewitness Yoakam recounted that the Dodge, traveling west on Seminole, entered the intersection from the east shortly ahead of the Oldsmobile operated by Payton. The Oldsmobile, going north on Glenstone in the two east or northbound lanes, was traveling 85 miles per hour. Yoakam testified the Chevrolet, driven by Dillinger northward in the inside northbound traffic lane on Glenstone at a speed of 65 miles per hour, was a block south of the intersection when the Oldsmobile struck the Dodge on Glenstone "about midway between the [east] curb and the center line." The Oldsmobile spun "towards the west and the Dodge traveled * * * right straight north on Glenstone." When the Chevrolet was 15 to 40 feet south of the intersection Yoakam saw its "brake lights come on [and saw that the Chevrolet] gave a good swerve to the right [east]." The witness estimated that eight to twelve seconds elapsed after the Dodge-Oldsmobile impact and before the Chevrolet hit the Dodge 75 to 85 feet north of Seminole. Yoakam "thought [the Chevrolet struck] the rear left-hand side of the Dodge" and recalled seeing "objects flying, but if they were a body or a gas tank or what," he didn't know. Subsequently Yoakam saw "a lady was laying [with] her head * * * approximately six or eight inches up against the [east] curb * * * and her feet were headed northwest." Considered with other evi-

dence, the lady whom Yoakam saw but did not identify was lying in an area of 60 to 70 feet, more or less, north of the north curbline of Seminole.

After the collisions, the Oldsmobile stopped at the west edge of Glenstone and the Dodge and Chevrolet came to rest at the extreme east side of the street. All three cars were about 100 feet north of the intersection. Pictorial exhibits revealed that the right front of the Oldsmobile and the left front of the Chevrolet were heavily damaged; the Dodge had extensive damage to its left front, damage to the left rear fender and tail light, and its right front door, according to a police officer, was "crushed in and forward [leaving] an opening there large enough for a person to come out." The officer identified a wavy gouge mark found on Glenstone as having been made by the right front wheel of the Dodge as it coursed northward during and following the impacts. The mark commenced five or six feet south of the north Seminole curbline and approximately 21 feet west of the east curb on Glenstone, and was continuously tracked to the Dodge's final resting place. A traffic accident report, admitted into evidence without objection as an unmarked exhibit under "The Uniform Business Records as Evidence Law" (V.A. M.S. § 490.660 et seq.), noted, inter alia, the second impact, i. e., the collision of the Dodge and Chevrolet, occurred "approx. 18' north of the north curbline of Seminole and 12 feet west of the east curbline of Glenstone."

■ Both plaintiff and Dillinger acknowledge the rule that when two or more independently acting persons are consecutively negligent in a closely related point of time and cause an injury which the fact trier determines cannot be reasonably apportioned among them, the tort feasors are jointly and severally liable for all

damages directly and proximately resulting from such negligence. Glick v. Ballentine Produce Incorporated, Mo., 396 S.W.2d 609, 612–613(5, 6), appeal dismissed 385 U.S. 5, 87 S.Ct. 44, 17 L.Ed.2d 5. Dillinger argues, however, this rule is inapplicable because "the only evidence in the case shows" that the first impact dispatched plaintiff from the Dodge so she was not in that vehicle when it was hit by the Chevrolet, and that the Chevrolet did not strike plaintiff when she was lying on the pavement. This is based upon Dillinger's assumption the Chevrolet only hit the right front door of the Dodge at a point 75 to 85 feet north of Seminole, and her conclusions that if plaintiff had been in the Dodge at the time of the second impact she would have been found north, not south, of this collision site or would have been found pinned inside the Dodge by the right front door which was "crushed inward." Dillinger's reasoning, in part, presumes that it was plaintiff who was "the lady" discovered lying near Glenstone's east curb, although in our perusal of the record we fail to find one witness who identified "the lady" as being the plaintiff. In her brief Dillinger refers to "the lady" as being the plaintiff, but proof of a fact cannot be bottomed on statements contained in an appellant's brief [Slivka v. Hackley, Mo., 418 S.W.2d 89, 90(2)], and the transcript pages to which we are referred by the brief to confirm identification lead us to the testimony of witness Yoakam who never did identify "the lady" and to the unsworn remarks of appellant's counsel made during his opening statement which do not qualify as evidence for the fact asserted. Hardwick v. Kansas City Gas Co., 352 Mo. 986, 991–992, 180 S.W.2d 670, 673(3); State ex rel. Horn v. Randall, Mo.App., 275 S.W.2d 758, 763(7).[1] We are directed to no evidence in the record, and have found none, which positively indicates where plaintiff was found after

---

1. We are not unmindful that in the opening statement of plaintiff's counsel reference was made to plaintiff being thrown from the Dodge. Nevertheless, such unsworn statements by plaintiff's counsel are no more acceptable as evidence than similar statements made by defendant's lawyer and, in any event, plaintiff does not concede her eviction from the Dodge occurred before its collision with the Chevrolet.

the accident. For all we know she could have been pinned inside the Dodge, but such conjecture is not necesarily harmonious with Yoakam's testimony that he thought the Chevrolet first hit the Dodge on the left rear side, or with the police officer's statement the right front door of the Dodge had been "crushed in and forward [leaving] an opening there large enough for a person to come out." But should it be assumed plaintiff was, in fact, "the lady" lying on Glenstone in the area in question, we do not believe "the only evidence" is that the Dodge-Chevrolet impact was north of plaintiff's position. Dillinger relies solely upon the testimony of Yoakam that the collision occurred 75 to 85 feet north of Seminole (an estimation he made when a block or a block and a half south of the intersection), and ignores the accident report which placed the point of impact only 18 feet north of the intersection and a considerable distance south of where "the lady" was found in the roadway.[2] Of course Dillinger's additional contention that the Chevrolet did not come into contact with plaintiff while she was lying in the street presupposes that plaintiff was thrown out of the Dodge by the first impact, and is dependent upon her argument "that the Dodge's course [northward] was some distance from the curb, [and] that the Chevrolet followed a course from the inside lane, near the center line, in the intersection to the right" at such a gradual angle that it passed safely to the west of plaintiff "to its final resting place." Such an argument disregards Yoakam's account of having seen the brake lights of the Chevrolet come on when it was 15 to 40 feet south of the intersection and then seeing the car give "a good swerve to the right." This testimony does not force the conclusion which Dillinger argues, and the mere fact the right front wheel of the Dodge was "some distance from the [east]

curb" on Glenstone (or 12 feet 10 inches at the nearest place) does not indicate, without doubt, the Dodge would not have been so positioned at any given time as to have denied the Chevrolet safe passage by plaintiff's prostrate body. Further observations are possible but not necessary. The jury was entitled to believe none or all of the testimony of any witness, or to accept it in part or reject it in part. Bell v. Pedigo, Mo., 364 S.W.2d 613, 616(4). Our recasting of the evidence, supra, is not designed to suggest what the jury should or should not have found the facts to be. Rather, what we say is merely to illustrate that the evidence and permissible inferences were sufficient to create a fact issue, and that it was for the jury to decide whether plaintiff's injuries and damages were a proximate result in whole or in part of defendant Dillinger's negligence. See Brantley v. Couch, Mo.App., 383 S.W.2d 307, 310–312 (1–3).

Defendant Dillinger maintains the circuit court erred in granting plaintiff a new trial on the ground that plaintiff was prejudiced when cross examined regarding her drinking, because (a) even though the cross examination to which plaintiff objected was erroneous, "Plaintiff invited the error and is estopped to claim error in the admission of the evidence, which is the same character and kind of evidence admitted at Plaintiff's request over [Dillinger's] objection," (b) the cross examination was proper on the issues concerning the amount of intoxicants Houston had consumed and plaintiff's "ability to know the abilities of [Houston] to operate the" Dodge, and (c) the size of the verdict for plaintiff against Houston demonstrates plaintiff was not prejudiced by the cross examination.

The record discloses that in plaintiff's opening statement the jury was told the evidence would show that before the acci-

---

2. Whether this statement in the accident report is hearsay or conclusionary in nature is not for determination here. Even so, it may be considered with other evidence in determining if a submissible case was made as the exhibit was admitted when offered without objection. Conlon v. Roeder, Mo., 418 S.W.2d 152, 159(5); Arnold v. Fisher, Mo.App., 359 S.W.2d 602, 607(5).

dent Dillinger had visited a number of taverns, and that a passenger in her car at the time of the collision had "consumed about a case of beer during the course of this day." As indicated by the traffic accident report, the police officer testified that seven cans of beer, three quarts of beer and a half pint of whiskey partly consumed were found in defendant's Chevrolet following the casualty. On cross examination of plaintiff and over her objections, she was questioned as to whether or not she and her three companions of the evening had "consumed that bottle" of gin of undetermined size; she was asked how many drinks she had had and answered, "two"; and she was queried as to her deposition answers wherein she had said the entire bottle had been drunk by her and her associates. Before her cross examination there had been no evidence or mention of plaintiff's intake of intoxicants. Plaintiff's written motions to suppress the evidence as to her drinking filed before trial, and her objections to the cross examination during trial, were based upon the assertions that there would be no evidence plaintiff's abilities were affected by the drinks she had, the drinks had nothing to do with causing the accident as she as not the operator of the Dodge, "her moral make-up and fiber is not in issue," and any reference to plaintiff's intake of intoxicants would be so prejudicial to her the consequences thereof could not be effectively soothed by any rulings or admonitions of the court.

As to reason (a), defendant argues that "Plaintiff set out to prejudice * * * Dillinger by associating her with liquor and now cannot be heard to complain of Plaintiff's own association with liquor, even if it was error. A party who voluntarily offers evidence of the same kind or character as he complains of has waived his right to complain." Although use of the term "curative admissibility" is diligently eschewed in defendant's brief, the cases cited to this point leave no room for doubting that this nebulous and nodous so-called doctrine permeates defendant's

rebellion against the ruling of the trial court. Missouri courts candidly admit a lack of assurance in comprehending the limits of the doctrine (Jefferson v. Biggar, Mo., 416 S.W.2d 933, 937; Young v. Dueringer, Mo.App., 401 S.W.2d 165, 168), and it will require a writer more perspicacious than the one at hand to avoid perplexity after scrutinizing the cases which clutch at or flirt with the tenet. Obviously, however, the doctrine is more complex and circumspect than the simple fallacious saying that two wrongs make a right or that a trial court should permit a second wrong to condone the first. One scholarly treatise (32 Missouri Law Review at pp. 507–508, Evidence—Curative Admissibility in Missouri, by James M. Beck) cautions that a collateral problem to curative admissibility must be distinguished, id est, "When a part of a conversation or transaction which is competent is in evidence, the court will often allow the balance of the conversation or transaction into evidence even though it be, for example, hearsay. Such evidence is permitted only insofar as it will eliminate confusion or facilitate the jury's evaluation of the competent portion. In these cases, the latter evidence derives its admissibility from what has gone before, but strictly speaking, is not a response in kind to inadmissible evidence in the first instance. Missouri courts often fail to make this distinction, however, validating such action at trial under the banner of curative admissibility, or citing * * * cases * * * in a pure curative admissibility situation. These cases * * * should be regarded as a separate and distinct problem." The author cites as an example Kelley v. Hudson, Mo. App., 407 S.W.2d 553, 556–557 (1–5), which does not employ the term but does cite authority that expressly refers to the doctrine. Also see: Sigman v. Kopp, Mo., 378 S.W.2d 544, 547(2), which, "by reason of the doctrine of curative admissibility," affirmed the trial court's ruling which allowed, over plaintiff's objection, a state trooper (plaintiff's witness) to relate for defendant a third driver's account of an accident after he had first testified for

plaintiff, without objection, what the other two drivers had told him about the casualty; Young v. Dueringer, supra, 401 S.W.2d at 167–168(1), where the court felt "constrained * * * by the rationale employed * * * in Sigman v. Kopp, supra," to rule the trial court had erred in sustaining plaintiff's objection to an inquiry by defendant for a trooper's opinion of plaintiff's speed after the witness had previously testified for plaintiff, without objection, as to the point of impact, etc.; and Jefferson v. Biggar, supra, 416 S.W. 2d at 937(2), wherein the Supreme Court refused to extend the doctrine of curative admissibility to a situation in which a police officer (plaintiff's witness) testified without objection, to what plaintiff told him concerning the traffic signals and on cross examination, over objection, was permitted to relate the condition of the signals as reported by two eyewitnesses, because "the statements now objected to were not mere continuations of a single conversation partially admitted, they came from persons not parties to this controversy, and the parties making them [as was true in the Kelley and Sigman cases] were not unavailable at the trial." Our aside to these last cited cases is that those parts of the conversations or transactions first admitted into evidence were not per se competent as suggested by the author of the law review article, but were received in evidence simply because no objection had been made.

Another line of authority sometimes commingled with curative admissibility, although the cases do not refer to the doctrine by name, includes Land Clearance Authority v. Doerenhoefer, Mo. (banc), 404 S.W.2d 385, 388(6); Eddings v. Keller, Mo., 400 S.W.2d 164, 173(9); Jackson County v. Meyer, Mo., 356 S.W.2d 892,

897(5); Clark v. Powell, 351 Mo. 1121, 1132, 175 S.W.2d 842, 847(9) (banc); Clark v. Crandall, 319 Mo. 87, 96, 5 S.W.2d 383, 386(7); McMonigal v. North Kansas City Development Co., 233 Mo.App. 1040, 1056, 129 S.W.2d 75, 83(15). These cases enounce such statements as, "Where a party voluntarily accepts an evidentiary theory tendered by his adversary and offers evidence of the same kind and character, he waives his right to assert on appeal that his opponent's evidence was erroneously admitted"; "When plaintiff opens * * * up [unrelated fields], defendant may then present evidence in the area opened by plaintiff, or at least plaintiff is not entitled to complain if he does"; and if a party by his conduct invites or participates in the introduction of questionable evidence, he will not be heard to urge it as error.

I Wigmore on Evidence, 3rd Ed., § 15, pp. 304–309, indicates that if one party offers an inadmissible fact which is received without objection, the doctrine of curative admissibility (within certain limitations) may permit the opponent to thereafter "offer similar facts whose only claim to admission is that they negative or explain or counter-balance the prior inadmissible fact." However, if the opponent duly objected and was erroneously overruled in the first instance, the doctrine should not be applied as the objection would (theoretically) save him on appeal and he is in need of no other protection.[3] The third rule pronounced by Mr. Wigmore (sometimes called "the Massachusetts rule") is said "to have received some recent acceptance in Missouri" (Jefferson v. Biggar, supra, 416 S.W.2d at 937, citing Biener v. St. Louis Public Service Co., Mo.App., 160 S.W.2d 780, 786), and provides the doctrine is applicable "whenever it is needed for removing an unfair prejudice which might otherwise have en-

3. This declaration and like ones appearing in Buck v. St. Louis Union Trust Co., 267 Mo. 644, 661–662, 185 S.W. 208, 213, and Dorn v. St. Louis Public Service Co., Mo.App., 250 S.W.2d 859, 866, have been interpreted to mean the doctrine is not applicable unless the original evidence is admitted without objection. 32 Missouri Law Review, supra, at 514. In other words, if the opponent elects to object to improper testimony and is overruled, "he cannot be heard to insist upon the admission of improper testimony in rebuttal." Buck, supra.

sued from the original evidence, but in no other case." Missouri courts, it appears, have additionally refined application of the doctrine by requiring that the curative rebuttal be confined to the evidential point to which the original evidence was directed, witness: Longmire v. Diagraph-Bradley Stencil Mach. Corp., Mo.App., 176 S.W.2d 635, 646–647, holding that when plaintiff testified without objection that his unexpressed intentions were he was to be paid for his services, defendant was not entitled to testify that he (defendant) did not expect to pay for those services because defendant's testimony would in no manner prove that plaintiff did not expect to be paid; Dorn v. St. Louis Public Service Co., supra, 250 S.W.2d at 866(9), which said, "The rule that irrelevant, incompetent, or illegal evidence may be admitted to rebut evidence of like character is rightly limited to cases where the rebuttal is confined to the evidential fact to which the original evidence was directed. It does not permit the indiscriminate introduction of like evidence touching other issues"; and Dickerson v. St. Louis Public Service Company, 365 Mo. 738, 750, 286 S.W.2d 820, 827 (13), (banc), which ruled that defendant was not entitled to read a report of a physical examination of plaintiff taken from records plaintiff had employed for other, unrelated purposes. "We do not think that [a] report of a physical examination * * * is so clearly evidence of the same character as pay-rates, period of employment, etc., as to make the rule applicable here." Also see Ferguson v. Missouri Pacific Railroad Company, Mo.App., 442 S.W.2d 549, 556(9).

■ The cases we have read, including those cited, are concerned with either situations where the proponent has lost in the trial court and complains on appeal concerning the curative evidence admitted on behalf of his opponent (e. g., Sigman v. Kopp, supra, 378 S.W.2d 544), or circumstances where the opponent on appeal contends the trial court erred in refusing to admit his curative evidence (e. g., Young

v. Dueringer, supra, 401 S.W.2d 165). No case has come to our attention where a defendant, successful with the jury, charges the trial court was wrong in granting plaintiff a new trial because of evidence which defendant says was proper under the doctrine of curative admissibility or some collateral rule heretofore noted. Nonetheless, we see no need to ignore defendant's reasonings because of such differences, although we have concluded the so-called collateral rules do not properly apply here and nothing we have read constrains us to extend the doctrine of curative admissibility to the facts of this case. The cross examination of plaintiff on the subject of her consumption of intoxicants was not intended to elicit the balance of a conversation partially admitted, nor designed to complete an explanation of a transaction, and when it is considered the cross examination progressed over plaintiff's repeated and continuing objections, it cannot be said that plaintiff invited or participated in the production of the evidence adduced by defendant. Though we do not deem the assertion accurate, defendant insists plaintiff's evidence associating Dillinger with liquor was *"over Appellant's objection"* (our emphasis). The authorities cited in footnote 3, supra, make the doctrine of curative admissibility inapplicable if defendant has elected to object to plaintiff's evidence, although the anomalous situation in the present case renders this element of the doctrine somewhat less than relevant. Nevertheless, if defendant's evidence was designed to rebut plaintiff on the same issue, we are bound by the requirement that defendant's evidence should be "confined to the evidential fact to which the original evidence was directed," whereas plaintiff's efforts, according to defendant, were directed to relating Dillinger to liquor and defendant's cross examination of plaintiff concerned an entirely different issue, towit, plaintiff's intake of intoxicants. Likewise, the fact that Dillinger had a favorable verdict at the hands of the jury now belies any assertion that defendant's evidence was needed "for removing an unfair

prejudice which might otherwise have ensued from the original evidence."

In our view the crux of this case is not necessarily that we decide whether the evidence of plaintiff's drinking was or was not admissible for any reason, but to determine if the trial court, in the exercise of its inherent discretion, properly granted plaintiff a new trial against Dillinger because the testimony was prejudicial. The office of the "simplificative rules" of evidence "is that in their operation they set aside or exclude * * * certain kinds of evidence (otherwise admissible so far as Relevancy is concerned) which are found to have an improper effect by *obstructing or confusing* rather than aiding or facilitating *the process of ascertaining the truth.* * * * So * * * if certain evidential material, having a legitimate probative value, tends nevertheless to produce also, over and above its legitimate effect, an unfair prejudice to the opponent, * * * there is good ground for excluding such evidence, unless it is indispensable for its legitimate purpose." VI Wigmore On Evidence, 3rd Ed., § 1864, pp. 489–491. Dillinger, in her answer, pleaded that plaintiff had assumed the risk of injury by entering the vehicle driven by Houston when she knew or should have known Houston had partaken of liquor or was in an intoxicated state. Because of this allegation Dillinger now argues, in substance, the cross examination of plaintiff was proper because it demonstrated plaintiff's sobriety and her ability to appreciate Houston's condition, and also "because the less [plaintiff] drank the more the others including her driver drank." Until plaintiff was cross examined there was no evidence that she had anything to drink or that she was inebriated in any sense of the word. Consequently the argument that it was necessary to show the amount of intoxicants plaintiff consumed in order to establish the fact she was sober seems rather strained. We are unaware that "a drink" consists of a given known quantity of liquor, for what may be "a drink" to one is no better than a sup to

another, and given a party of four bent upon deflowering a bottle of spirits with only the knowledge that one thereof has had "a drink" therefrom but twice, who dares calculate the intake of any one of the other three sans information of the rapidity with which each drinks and whether, jointly or severally, they sup or gulp. Ergo, plaintiff's two drinks would not measure Houston's consumption, and Dillinger's assurances, dehors the record, as to what evidence could have been produced on the subject had she not chosen to stand on her motion for a directed verdict, emphasizes the cross examination of plaintiff in this area was not indispensable to prove the point. The primary reason advanced by defendant to acquit from error the evidence of plaintiff's drinking is not that it established plaintiff's intoxication, but that it was collaterally effective to counterbalance evidence employed by plaintiff "to prejudice Appellant Dillinger." However, conceding arguendo the defendant's cross examination of plaintiff was relevant for some purpose, nevertheless, "[i]f evidence pertaining to collateral matters brings into a case new controversial matters which * * * cause prejudice wholly disproportionate to the value and usefulness of the offered evidence, it should be excluded." Conley v. Kaney, Mo., 250 S.W.2d 350, 353 (4). It has also been written that exclusion of this type of evidence "is demanded" [Jones v. Terminal R. R. Ass'n of St. Louis, Mo., 242 S.W.2d 473, 477(7)], and that "[t]he law has wisely invested the trial court with discretion to deal with these situations." Shechter v. Brewer, Mo.App., 344 S.W.2d 784, 792. The question of social drinking is so controversial that in some circumstances evidence thereof, even if it fails to prove any degree of intoxication, can be unfairly prejudicial. Doisy v. Edwards, Mo., 398 S.W.2d 846, 849–850(3), held that the trial court did not err in excluding evidence of a party's drinking when it was not coupled with other testimony tending to show that defendant was under the influence of intoxicating liquor. It should follow, therefore, that if a trial

court can properly exclude such testimony, the same tribunal, in the exercise of its sound discretion, may determine its admittance into evidence was so prejudicial as to justify the granting of a new trial, and that a withdrawal instruction as given here was an "attempt to unring the bell [which] came far too late" to remove the prejudice. Wehrkamp v. Watkins Motor Lines, Inc., Mo., 436 S.W.2d 698, 709. Additionally, we do not believe that plaintiff's verdict against one of the defendants dispels the prejudice or attests to the fact it was not effective in favor of the other.

■ Courts of appeal are more liberal in upholding a trial court's action in granting a new trial than in reversing and remanding a judgment on the same ground [State ex rel. State Highway Commission v. Northeast Building Company, Mo., 421 S.W.2d 297, 302(6)] because the trial court has a superior opportunity to observe and determine the over-all prejudicial effect of evidence, either singly or in the aggregate [Mochar Sales Company v. Meyer, Mo., 373 S.W.2d 911, 916–917(11)], and an appellate court ordinarily does not interfere with the trial court's grant of a new trial unless an abuse of discretion is clearly shown. Higgins v. Gosney, Mo., 435 S.W. 2d 653, 661(14). As we detect no such abuse of discretion, and for reasons previously stated, the order of the Circuit Court of Greene County granting plaintiff a new trial against defendant Dillinger on the issue of liability only is affirmed.

HOGAN, P. J., and STONE, J., concur.