## THE BANK OF MOBILE v. MARSTON.

1. Where commercial paper is placed in the hands of a notary for demand and protest, if he has not given notice to the drawer and indorsers, he must inform the holder with all reasonable despatch what he has done; and if he has undertaken to give notice, he must perform this duty in such a manner as not to prejudice the holder's rights.

2. The certificate in the protest of a notary setting forth the demand and refusal of an inland bill, &c., and notice to the drawer and indorsers, is made evidence by statute, yet it is not conclusive; and it is competent for the party to show such a state of facts, as prove that the certificate is untrue.

3. Where the notary certifies that he has given notice of the dishonor of paper to the drawer or indorsers, and the holder in consequence thereof, fails to give it, if the certificate of the notary is false, he will be bound to make good any loss which may result from its falsity.

4. Where the maker of a note who has indemnified his indorser, afterwards shows the note to the latter, telling him that he has paid it, and demanding a release of the indemnity, which is accordingly done; if the note has not been paid, the holder cannot excuse the want of notice to the indorser by showing that he had been indemnified.

5. The measure of damages in an action against a notary for failing to give notice of the dishonor of paper according to his undertaking, must be graduated by the injury sustained by the neglect; in estimating which, the solvency of the party to whom the notice was given, is an important element.

Appeal from the Circuit Court of Mobile.

THIS was an action on the case by the plaintiff in error against the defendant, to recover damages for his neglect to give notice to Thomas G. Newbold, that a promissory note

made by Jeremiah Findley and John Cody, and indorsed by Newbold, Andrews, and Fontaine & Freeman, for the payment of seven hundred and forty-one dollars on the first and fourth of January, 1839, had not been paid at maturity, by the maker. The cause was tried upon an issue of fact, and the jury returned a verdict for the defendant, on which a judgment was rendered.

On the trial, the plaintiff excepted to, the ruling of the Court. It is shown by the bill of exceptions, that the plaintiff read the note and indorsements to the jury, also a notarial protest made by the defendant, in which he states, " that the indorsers have had due notice of the demand and non-payment, and protest of said note, by notice in writing, directed by me, as follows: to T. G. Newbold, and left at his office; and for the two last indorsers, and left at the office of Fontaine & Freeman." *Further*—the plaintiff proved that the makers and indorsers were, at the maturity of the note, with the exception of Newbold, insolvent, and still continued so, and Newbold was now insolvent. The record of a suit against Newbold upon his indorsement, was also adduced, in which a judgment was rendered in his favor, on the 24th of December, 1841; the defence of that action was as Newbold testified, the want of due notice of non-payment by the makers.

The plaintiff also proved by Newbold, that at the time of the protest he had no office in the city of Mobile, or elsewhere, and that he never received notice. It was also shown by the same witness, that the note in question was one of three, payable in one, two, and three years; that the makers had transferred him indemnity for his indorsement. At the maturity of the third note it was presented to him by the makers, who stated that all the notes were paid, and required him to release his indemnity; which he did. The first intimation that he afterwards had, that he was looked to for the payment of the note, was about the time he was sued on his indorsement.

It was further shown that the uniform custom and usage in Mobile, required that a notary to whom a negotiable note was given for demand and protest, should himself give notice of the non-payment to the indorsers. The defendant offered no evidence, and the Court charged the jury that the plaintiff was not entitled to recover.

P. PHILLIPS, for the appellant, cited The Bank of Mobile v. Huggins, 3 Ala. Rep. 213; Story on Agency, 197; 6 Shepley's Rep. 10S.

BLOUNT, for the appellee, cited 3 Johns. Rep. 427; 10 Id. 38; 9 Id. 141; Story on bills, 359; 1 Ala. Rep. N. S. 565; 3 Ala. Rep. 213; 2 Johns. Rep. 205, 327; 7 Id. 385.

COLLIER, C. J.—The charge to the jury impliedly admits the truth of all the evidence adduced, and the inferences legitimately deducible therefrom, and affirms, that the plaintiff is not entitled to recover. It is needless to consider at large the duties of a notary, in respect to giving notice to the drawer or indorsers of commercial paper, placed in his hands for demand and protest. We think it clear that he should at least inform the holder whathe has done, with all reasonble dispatch, if he has not given notice; and if he undertakes to perform this service, he must perform it in such manner as not to prejudice the holder's rights. In the present case it was shown to have been the usage in Mobile, for notaries to give notice to the indorsers of the non-payment of paper, such as that in question; further—that the defendant did actually attempt to give such notice. This being the case, he should have given it in such manner that it would have been effectual in law. The certification in the protest upon this point is made evidence by statute, yet it is not conclusive; but it is competent for an indorser to prove that he could not have received a personal notice, because he was elsewhere and had no·agent: he may also show that he had no place of business at which a notice could have been left, or any other fact which negatives the recital in the protest.

Even if the holder was furnished by the notary with the papers, so as to have enabled him to have given due notice to the proper parties, the affirmation of the protest that the indorsers had been notified, showed this to have been unnecessary, if true. And he was authorized to give all credence to the recital, and look to the notary to repair any injury that might result from its falsity.

In Stephenson v. Primrose, 8 Porter's Rep. 166, we state, as a deduction from the authorities, that when an indorser, before the maturity of the note, obtains an assignment of *all* the

maker's estate, or of so much as is necessary to indemnify him against the consequences of his indorsement, the maker's default will fix the indorser's liability, without the previous steps of a demand and notice. [See also Story on bills, 359.] We will not stop to inquire, whether the indemnity about which the witness spoke was ample, or covered all the property of the makers of the note; or rather, whether this was not one of the inquiries of fact that should have been submitted to the solution of the jury. When the makers of the note showed it to the indorser, stating that it had been paid, and asking that the indemnity might be released, the latter might very well have inferred the truth of the statement from the possession of the paper, and complied with their request. Under such circumstances the holders of the note could not claim as against the indorser, any benefit from the indemnity, or set it up as an excuse for the omission to give notice of non-payment. And it is not a legal conclusion, from the possession of the note that the makers had paid it, and again put it in circulation in fraud of the indorser's rights.

Whether a judgment against Newbold would have resulted in the collection of the amount of the note, is a matter which could not determine the plaintiff's right to a verdict in the case at bar. If he was insolvent the plaintiff would be entitled to nominal damages, if the facts established a breach of duty on the part of the defendant; beyond this, the recovery would have been graduated by the loss which the defendant's neglect occasioned. In estimating which, the solvency of the indorser would of course be a material inquiry.

It is unnecessary to consider this case at greater length.— The Bank of Mobile v. Huggins, 2 Ala. Rep. 206, lays down principles, which, if observed, will most probably lead to a correct decision upon another trial. We have only to add, that the judgment of the Circuit Court is reversed, and the cause remanded.