## Louisville Railway Company v. Sweeney.

(Decided February 27, 1914.)

Appeal from Jefferson Circuit Court
(Common Pleas No. 2).

1. Trespass — Personal Injuries—Negligence—Street Railroads.— Where a street car leaves the track and knocks down a tele- phone pole standing on the side of the street against a person on his own premises, or the pole in falling knocks a gate against such person and injures her, a trespass is committed and she may recover without showing negligence on the part of the street car company.

2. New Trial—Misconduct of Counsel.—The court having excluded a statement made by the attorney, and cautioned the jury to disregard it, a new trial will not be granted for this misconduct.

3. New Trial—Evidence.—The admission of the opinions of non-ex- pert witnesses as to the condition of an injured person will not be ground for new trial where on the whole case it was not pre- judicial.

FAIRLEIGH, STRAUS & FAIRLEIGH, HOWARD B. LEE and ALFRED SELLIGMAN for appellant.

EDWARDS, OGDEN & PEAK for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

Mrs. Jennie Sweeney lived on Payne street in Louis- ville between Spring and Charlton streets. Payne street makes a curve at Charlton and she lived about 150 feet west of the curve. The Louisville Railway Company operates its street cars on Payne street. After passing the curve at the intersection of Charlton street there is

a steep grade on the car tracks going east. On June 16, 1911, a street car going west and coming down this grade at the curve or near there left the track, and as it went on down the street collided with a telephone pole which it knocked down and the pole fell against the gate of Mrs. Sweeney's lot. She was standing in the gate and the force of the pole knocked the gate with violence against her. Her statement of the transaction is as follows: "I heard a terrible crash of fire, an awful noise, and looking forth, saw it. Then my little boy was on the street, I was sending him up the street, and of course I saw the child coming up the street and I threw my gate open and as I did the pole snapped and hit and threw me back in the yard. I didn't know no more from that; the pole struck the gate and the gate struck me right here about the pit of the stomach." As to her suffering in consequence of the injury she said: "I suffered with my head and all one side; I was paralyzed; I didn't know of course what my trouble was; I lost all feeling in the left side." There was proof introduced on the trial on behalf of the plaintiff tending to show that the car came down the grade into the curve at too great a rate of speed and that the track was out of order in this way; the street car company was preparing to lay down a new track and had taken out some of the spikes holding the rails and had dug out the ballast from between the ties preparatory to putting in a new track. The evidence for her also tended to show that the car left the track at the point where it had thus been weakened, while the proof for the defendant was to the effect that the car left the track after passing this point. The defendant offered no evidence on the trial explaining the accident or to account for it. The court told the jury in substance that if they believed from the evidence that the car left the track and ran against the pole and that the pole was thereby thrown against the gate at the Sweeney property, and the gate was thereby caused to strike the plaintiff and she was thereby injured, they should find for her. The jury found for the plaintiff in the sum of $4,200. The defendant appeals.

The propriety of the instruction above indicated is the chief ground relied on for reversal. We are referred by counsel to a number of cases especially Sweeney v. Erving, 228 U. S., 233, to the effect that the doctrine of

*res ipsa loquitur* does not warrant the instruction and that on the facts the question of negligence should have been submitted to the jury.

The plaintiff was standing on her own property and while standing there was injured by the street car leaving the track and running against the pole near the sidewalk and throwing the pole against the gate which thus knocked the gate violently against her. The case would be exactly the same if the pole had struck the plaintiff while standing on her own property, or if the street car without striking the pole or the gate had itself run against her and inflicted the injury to her upon her own property; for the force of the street car put the pole in motion; and the law traces the force which injured the plaintiff back to its starting point. The rule announced in the celebrated squib case has been uniformly followed since. In that case a man threw a lighted squib into the market place; one person knocked it from him another also knocked it off, and a third was injured. It was held that the person who threw the squib was answerable to the person injured. The same rule must apply here, and the law of the case is the same as it would be if the street car had itself run against the plaintiff at her gate.

The plaintiff as the owner of her property was entitled to the undisputed possession of it. The entry of the defendant upon it either by its street car or by the pole which it set in motion, was a trespass. One who trespasses upon another and inflicts an injury, is liable for the injury unless caused by the act of God or produced by causes beyond his control. We have held that one who in blasting throws rock or other debris upon the land of another, is liable for the injury done irrespective of whether the blasting was negligently done or not, as there is in such a case an actual invasion of anothers premises and the act itself is a nuisance. The same principle has been applied to the pollution of air or the abstraction of any portion of the soil, or the casting of anything upon the land in other ways. (Langhorne v. Turman, 141 Ky., 809, Langhorne v. Wilson, 91 S. W., 254, and cases cited.) The same principle must apply here. The plaintiff while standing on her own premises was struck and injured by a force put in motion by the defendant which knocked over the telephone pole and threw it upon her gate, causing the gate to inflict a serious in-

jury upon her. The act was a trespass. The defendant had a right to run its cars in the street, but it had no right to run them upon the plaintiff's property or to throw things out of the street on her property. The doctrine of *res ipsa loquitur* in case of negligence has no application. The defendant introduced no evidence to show that the occurrence happened from causes beyond its control or by the act of God. In fact it did not undertake to explain the occurrence in any way. The court, therefore, properly instructed the jury to find for the plaintiff as above indicated.

The attorney for the plaintiff in stating his case to the jury referred to the fact that the priest who was sent for when Mrs. Sweeney was hurt, administered final unction. The court stopped the attorney and told the jury to disregard the statement. When the priest was on the witness stand the attorney asked him: "What did you do —?" But before he could finish the question, the court again stopped him; and we must assume that the jury obeyed the admonition of the court. The attorney was not justified in his conduct but a judgment will not be set aside for such misconduct where the court promptly intervenes and condemns it.

Some of the witnesses for the plaintiff were allowed to state their conclusions as to whether the plaintiff appeared to be suffering very much, or to be in a very bad condition, and while some of this testimony was improper, as the witnesses were not experts, it could have had no serious effect on the trial for the reason that the real facts were fully brought out before the jury by the physicians.

The verdict is not so excessive as to warrant us in disturbing it if the testimony of the plaintiff and a number of witnesses who testified for her is to be believed.

Judgment affirmed.