THE PEOPLES BANK OF GLASGOW, RESPONDENT, v. ANN YAGER, APPELLANT.*

Kansas City Court of Appeals. December 6, 1926.

*Corpus Juris-Cyc References: Bills and Notes, 8CJ, p. 259, n. 43; p. 444, n. 9; p. 1025, n. 76; p. 1026, n. 2; p. 1064, n. 80; Evidence, 22CJ, p. 1170, n. 25.

*Roy D. Williams* and *E. W. Henry* for respondent.

*Lamb & Lamb* and *Percival Birch* for appellant.

BLAND, J.—This is an action upon a promissory note in the sum of $2900, dated July 5, 1925, due one hundred and eighty days after date, payable to plaintiff and executed by Leo Wells, Josephine Wells and Mrs. W. B. Yager. Plaintiff introduced the note and rested, thereupon defendant, Ann Yager, who is the same person as Mrs. W. B. Yager and who signed the note as one of its makers, introduced testimony tending to show that she signed the note as an accommodation to plaintiff. At the conclusion of the evidence introduced in her behalf, the court, at the instance of plaintiff, directed the jury to find for plaintiff, which resulted in a verdict and judgment in the sum of $3069.10 against the defendants. Defendant, Ann Yager, has appealed.

The petition is in the usual form. Defendant, Josephine Wells, filed no answer and made no defense to the suit. The answer of the defendant, Ann Yager, pleads that there was no consideration passing from plaintiff to the defendant for the execution of the original note signed by her and that the note sued upon was one of a series of renewal notes; that the original note was signed by defendant for the accommodation of plaintiff and upon the representation by plaintiff that she would not be liable thereon and would not be required to pay the same. The reply was a general denial.

The evidence shows that defendant, Ann Yager, is the mother of defendant, Josephine Wells, and that Leo Wells, one of the makers of the note, is the husband of Josephine; that in the year 1922 and prior thereto Leo Wells was indebted to plaintiff in an amount between $4500 and $4600; that this indebtedness was evidenced by a number of notes executed by said Wells to plaintiff, a part of which indebtedness was secured by a chattel mortgage.

Leo Wells, testifying for defendant, stated that in November, 1922, when one of the witnesses was due he had a conversation with plaintiff's cashier who told him (in the words of the witness)—

"He said the bank examiner wouldn't let the note stay at the bank no longer that way—it would be getting him 'in bad' if he did, and he had stayed with me and didn't want to; and I told him there was nobody else I could get to go on the note for security, and he asked how Mrs. Yager was fixed, and I said I didn't know much more about her than he did only she was a widow woman and didn't have much to depend on for a living; and he asked if she would sign it, the note, and I said, 'I don't know.' He told me to ask her, and to tell Mrs. Yager it would be a big accommodation for him if she would do it, and he didn't intend to make her pay the note if she went on it, and it would make the note show up good for the bank examiner."

That the cashier then made out a note in the sum of $2900 and the witness signed it and took it to Mrs. Yager for her signature. The witness further testified—

"I told her (Mrs. Yager) what Mr. Turner told me—that it would be a gr⌐⌐⌐ accommodation for her to sign that note; that it would not c⌐ ⌐t her anything and help him get it by the bank examiner. She said she wouldn't sign it unless Mr. Turner had said that."

He further testified that Mrs. Wells would not sign the note for him (the witness) because she knew that he would not be able to pay it; that when Mrs. Yager signed it he took it and delivered it to the cashier; that no money changed hands between the parties at this time. The witness testified that he had no money at that time with which to pay his note; that "I didn't have very much security to go any further." The court refused to permit the witness to testify that he had security with the bank for other money he owed it, which security was not sufficient to insure the full payment of that indebtedness, and that the witness was insolvent at the time the defendant signed the note.

Mrs. Yager testified that the witness Leo Wells brought the note to her house in November, 1922, where she signed it; that Leo Wells told her that he owed the plaintiff the sum of $2900 and that the cashier had said the bank examiner "had required more security and he asked me to sign the note for the bank;" that Leo stated that the cashier had said, " 'If I would sign the note I would never have to pay it.' " The court refused to permit the witness to testify that she knew what Leo's financial condition was at the time and that she would not have signed the note for him at that time.

It is insisted that the court erred in directing the jury to find for plaintiff, for the reason that defendant's evidence was sufficient to go to the jury upon the question as to whether defendant signed the note as accommodation maker for the bank and without any consideration moving to her. We think this point is well taken. There is no question but that if the evidence introduced on the part of defendant is true, the note was signed by her as an accommodation for the bank and it is always competent to show a lack of consideration as between the accommodating person and the person accommodated.

"The party for whose benefit accommodation paper has been made acquires no rights against the accommodation party who may set up the want of consideration as a defense to an action by the accommodated party, since as between them there is no consideration, a fact which is always a defense to a suit on negotiable paper between the immediate parties. He is not liable to the party accommodated, although he also signed for the accommodation of another party, or although a co-maker received value from the party accommodated, or although he signed for the accommodation of two other parties and a valuable consideration passed between the parties accommodated. If an acceptance is for the accommodation of the payee, the acceptor will not be liable to him." [8 C. J. 259, 260.]

The law as laid down by Corpus Juris is fully sustained by the authorities in this State. [Cox v. Heagy, 184 S. W. 495, 497; St. Louis Union Trust Co. v. Laughlin, 254 S. W. 844; Farmers' Bank v. Harris, 250 S. W. 946; Bank of Commerce v. Laughlin, 264 S. W. 706; Central National Bank v. Waterscheid, 204 Mo. App. 179.] As was said in Walfinbarger v. Metcalf, 282 S. W. 749, 750—

"While it is the settled law that a promissory note may not be contradicted by parol evidence of a contemporaneous agreement that it is not to be paid according to its face, yet this rule does not prevent proof of want or failure of consideration between the original parties. [Holmes v. Farris, 71 S. W. 116, 97 Mo. App. 305; Bank of Dexter v. Simmons (Mo. App.), 204 S. W. 837.]"

Of course where it appears that the party accommodated is not the payee in the note but the primary maker thereof, the accommodating party cannot, under the guise of showing a failure of consideration, seek to violate the parol evidence rule by offering to prove that a promissory note absolute on its face is to be paid only on the happening of some contingency or is not to be paid by the accommodating maker in any event. [Walfinbarger v. Metcalf, supra; 22 C. J., pp. 1169, 1170; Wells v. Klepper, decided at this term.] We have examined the authorities cited by plaintiff and find that they are all cases in which the person accommodated was

the primary maker and not the payee; they have no bearing upon the question now before us.

A lack of consideration, as far as defendant is concerned, having inhered in the original note which she signed in November, 1922, such lack was carried into and attached to the subsequent renewal notes unless some additional consideration was given for such notes. [Farmers' Bank v. Harris, supra.]

The point made by plaintiff to the effect that defendant will not be allowed to assert that she lent "her money to the bank for the purpose of deceiving the bank examiner" and that it was "even beyond the power of the board of directors to make such an agreement," is not well taken. [Farmers' Bank v. Harris, supra, l. c. 949; Chicago Title & Trust Co. v. Brady, 165 Mo. 197; Central Nat'l Bank v. Waterscheid, supra.]

There is nothing in the case of Bank of Dexter v. Simmons, 204 S. W. 837, inconsistent with this holding. In that case the defendants were accommodation makers for one Mohrstadt who was the primary maker and not the payee in the note.

We think that the court erred in refusing to permit defendant to show that the security Leo Wells had with the bank was insufficient to pay his indebtedness and that said Wells was insolvent. This had a bearing upon the situation of the parties at the time the original note was executed by defendant, and tended to show that the note was signed by her for the accommodation of the bank in order to assist it in deceiving the bank examiner rather than for the accommodation of the primary maker Wells. The fact that the latter was insolvent and not able to pay his note due at the bank when defendant signed the original note of which the one sued on is one of a series of renewals tended to sustain defendant's contention that she signed it in order for plaintiff to cause the bank examiner to believe that the note was executed by at least one solvent person. Of course, if Wells was solvent and could furnish good security, then there was no necessity of getting another signer on the note as the note was good, at least when the additional collateral security was furnished, and would pass muster with the bank examiner. If Wells was unable to pay his indebtedness, the original note signed by defendant was not executed for the purpose of assisting him in protecting his property from a judgment upon the note in a possible suit brought by the bank, had his prior note not been extended, for Wells was insolvent and a suit against him would have been lost labor. It will be noted that plaintiff, in fact, did not sue Wells in this case.

The judgment is reversed and the cause remanded, *Arnold, J.,* concurs; *Trimble, P. J.,* absent.