STATE EX REL. PARK NATIONAL BANK, RESPONDENT, v. GLOBE INDEM-NITY COMPANY ET AL., APPELLANTS.[*]

Kansas City Court of Appeals. February 13, 1928.

*Corpus Juris-Cyc. References: Acknowledgments, 1CJ, p. 857, n. 45; p. 902, n. 95; p. 904, n. 8, 14; Appeal and Error, 3CJ, p. 874, n. 68; p. 984, n. 19; 4CJ, p. 818, n. 79; Bills and Notes, 8CJ, p. 259, n. 43; Payment, 30Cyc, p. 1228, n. 54; p. 1246, n. 63; p. 1247, n. 64; Pleading, 31Cyc, p. 761, n. 98; Trial, 38Cyc, p. 1362, n. 60; p. 1612, n. 13; p. 1636, n. 22 New.

*John F. Gell, Donald W. Johnson (J. M. Johnson* of counsel) for respondent.

*Lathrop, Morrow, Fox & Moore, Richard S. Righter* and *Henry W. Fox* for appellants.

ARNOLD, J.—This is an action brought at the relation and to the use of the Park National Bank a corporation organized under the laws of the United States, with its offices and place of business at Kansas City, Mo., and doing a general banking business, against a notary public and the surety on his bond for damages alleged to have resulted from the alleged negligence of the notary in taking the acknowledgment to a deed of trust signed by persons who falsely represented themselves to be one Frederick Harris and Mary Ann Harris, his wife.

Defendant the Globe Company is a corporation, organized according to law and authorized to do business in the State of Missouri, and, at the time of the transaction complained of, was transacting business in Kansas City, Mo., as a bonding or surety company. Defendant Ray-

mond L. Comstock was a duly appointed notary public in and for the county of Jackson and State of Missouri whose commission was dated January 27, 1923, for a period of four years from said date. At the time his commission was issued a general notarial bond was executed in the penal sum of $5000, with Raymond L. Comstock as principal and the Globe Indemnity Company as surety for the faithful performance by Comstock of the duties of his office.

The petition charges that said Comstock failed so to perform his duties in this, that on February 23, 1924, he certified that he took the acknowledgment of Frederick Harris and Mary Ann Harris, his wife, to a certain deed of trust purporting to convey lot 17, block 2, amended plat of Llewellyn Place, an addition to Kansas City, Mo., as security for a certain note for $3000; that Frederick Harris and Mary Ann Harris, his wife, did not so appear before Raymond L. Comstock on said February 23, 1924, nor at any other time, were not known to said Comstock and did not execute said instrument, nor did they acknowledge the execution thereof as their free act and deed as certified by said Raymond L. Comstock.

The petition further alleges that the Potts-Lasister Realty Co., the designated payee in the note and beneficiary in the deed of trust, was a copartnership composed of Lute Potts and Joseph E. Lasister; that in July, 1924, said Lasister presented said note, deed of trust and an abstract of title to the Park National Bank as security for a loan of $2500; that said abstract had been duly certified and showed the title to said property "to be well vested in Frederick Harris and Mary Ann Harris, his wife;" and said bank, having examined the note, deed of trust and abstract and being satisfied that the security was ample, and relying upon the genuineness of the note, deed of trust and said acknowledgment, agreed to lend the $2500 on the security thereof; that the said transaction was in July, 1924, the exact date not being specified, and that on July 8, 1924, said Lasister caused one Cora Farman to give relator her accommodation collateral note for $2500, payable to relator, and, as security therefor the $3000 note and deed of trust were pledged.

The petition stated the Potts-Lasister Realty Co. is insolvent and had been dissolved prior to said transaction; that Cora Farman is also insolvent and absent from Jackson county and that her said accommodation note is worthless and uncollectible; by reason whereof said loan of $2500 has been lost to the bank. Judgment is prayed in the sum of $5000, the full penalty of the notarial bond, and that execution issue in favor of plaintiff to the use of relator in the sum of $2500, with interest from September 8, 1924, at eight per cent.

The separate answers of defendants were in the nature of general denials and for affirmative defense declare that relator's loss, injury and damage, if any, resulted wholly from the carelessness and negligence of relator in failing to use reasonable care in the examination

of the abstract of title; that if reasonable care had been used in such examination, relator would have discovered facts which "would and should have caused an ordinarily careful and prudent person to decline and refuse to accept or place reliance on said deed of trust and the note purporting to be secured thereby."

Upon the issues thus joined, the cause was tried to a jury, resulting in verdict for plaintiff in the sum of $1997.83, and the following judgment was rendered:

"Wherefore, it is ordered, adjudged and decreed by the court that the plaintiff have and recover of and from said defendant, the sum of one thousand nine hundred ninety-seven and 83/100 ($1997.83) dollars, the damages aforesaid as assessed by the jury, with interest thereon until paid at the rate of six (6%) per cent per annum, together with all costs herein and have therefor execution.

Motions for a new trial and in arrest were unavailing and defendants have appealed.

The facts disclosed by the record are that Frederick Harris had been single and unmarried from 1898 to the date of the trial. In 1904, he acquired title to lot 17, block 2, Llewellyn Place, an addition to Kansas City, Mo., and denominated No. 4438 Tracy avenue in said city. In 1906, he conveyed said property to his sister, Mary Ann Harris. There had been some encumbrances against it, but in 1914, the last of these was paid off and discharged. From that time forward, the title thereto remained unclouded except for the alleged forged instrument here in controversy. Mary Ann Harris died June 21, 1923, and at her death was the record owner of the lot, never having divested herself thereof after the deed to her by Frederick Harris.

It appears that in 1923, in a real estate office at 47th street and Troost avenue, Harris met one Joseph E. Lasister who about that time secured a tenant for Harris for the lot in question upon which a residence had been erected. Thereafter there were no further business dealings between the two.

The testimony shows that on February 23, 1924, Lasister accompanied by an elderly man and woman went into the Linwood National Bank and there met defendant Comstock who was a notary public and with whom Lasister had a casual acquaintance. Comstock was not acquainted with either of Lasister's companions who were introduced to him by Lasister as Frederick and Mary Ann Harris, husband and wife. In the presence of Comstock, these persons signed the deed of trust in controversy, purporting to secure a first mortgage bond of $3000, using the names of Frederick Harris and Mary Ann Harris.

Requiring no further proof of identity of the parties than Lasister's introduction, Comstock took their acknowledgments to the instrument and certified that the parties were known to him to be the persons described in and who executed the instrument. The said deed of trust

was recorded March 4, 1924, purporting to be a first lien on the property at 4438 Tracy avenue. The principal note or mortgage bond, at the same time, was identified in the recorder's office. A few days later, Lasister applied to H. D. Paynter, president of relator bank for a loan, offering said mortgage bond and deed of trust as security therefor and a loan of $1500 was made by the bank on the credit of said $3000 mortgage bond and deed of trust. On April 10th thereafter the amount of his loan on said collateral was increased to $2500 and a new note for that amount was executed by Lasister, due in ninety days. Subsequently relator bank loaned Lasister various sums without security from May 13 to June 28, 1924, until the total amount borrowed from the bank was $6445. This amount was in excess of the legal limit which the bank was authorized to lend under the national banking laws, the capital of the bank being but $50,000 and the bank being limited to ten per cent of the capital in lending to one borrower.

In July, 1924, Paynter told Lasister he must reduce his loans to come within the legal limit. Thereupon Lasister brought to the bank a Mrs. Cora Farman who executed a note payable to the bank for $2500, to be secured by the note for $3000 and the deed of trust in question. Relator bank then switched the collateral security from the $2500 note of Lasister to that of Mrs. Farman. In this manner Lasister's indebtedness on the books of the bank was reduced by $2500, he being credited with the amount of the Farman note, thus fixing the amount of his indebtedness to the bank to a figure within the loan limit under the law. On August 18, 1924, relator wrote to Frederick Harris at 4428 Tracy avenue that $105 interest on his $3000 note would be due on August 21st. Harris, to whom the letter was forwarded to his residence in Kansas City, Kans., replied that he did not own any property at 4428 Tracy avenue, but that he did own the property at 4438 Tracy avenue and that it was clear and had no notes against it.

Plaintiff introduced in evidence a record of a verdict against Joseph E. Lasister indicating that on April 30, 1925, in the circuit court of Jackson county, Mo., seven verdicts (apparently on seven counts of the petition) were returned in favor of relator for various amounts and on these verdicts judgment was entered in a single sum of $10,728.69. On the margin of this record the following entry appeared:

"Oct. 4th, 1926: The within judgment is hereby credited in the sum of thirty-five hundred eighty-six and 91/100 ($3586.91) as per orders of the court this date made.

"(Signed)      PARK NATIONAL BANK,
            By      JOHN F. CELL,
                  Attorney for plaintiff.

"Oct. 15th, 1926: The within judt. is hereby credited this date in sum of $139.20.

PARK NATIONAL BANK,

By     JOHN F. CELL,

Attorney for plaintiff."

Relator sought to prove by John F. Cell, relator's attorney, the contents of the petition upon which these judgments were obtained. Mr. Cell stated that he could not find the original petition in the clerk's office and that neither he nor Mr. Johnson, his co-counsel, had a copy of it; that, according to his memory the sixth count of such petition charged an indebtedness of $2500 against Lasister and his partner Lute Potts "on account of a note that was given to the bank by Mrs. J. F. Farman, and alleged that it was the indebtedness of the partnership to the bank, and claimed a judgment on it as a part of the indebtedness of the partnership to the bank. That, in a general way, is what the petition sets forth."

Defendants moved that this testimony be stricken out on the ground that it was unsatisfactory as to the contents of the petition and insufficient to establish the allegations of the petition as evidence in the case. This motion was overruled.

Plaintiff introduced an application for the appointment of a receiver for the Potts-Lasister Realty Company, together with the final report of such receiver, Donald W. Johnson, who was relator's attorney, showing disposition of certain property apparently belonging to Lasister. This report indicates the credit of $3586.91 entered upon the judgments against Lasister was obtained as follows: The Park National Bank purchased a second mortgage note from the receiver Johnson, in the amount of $1900, which had been reduced by payments to $1680.79, for the sum of $1176.55, and this amount was credited upon the said judgment. Said bank also purchased from said receiver a second mortgage note in the amount of $1850, of which the second mortgage securing it had been foreclosed and the sum of $1350 credited thereon as a result of the sale. The remainder due on the note was $470, and the Park National Bank paid for this note the sum of $100, and this amount also was credited on the judgment. The receiver also sold to the Park National Bank a note for $1900 for $1298.86, and this latter sum was also credited on the judgment against Lasister. The receiver also sold to the Park National Bank two second mortgage notes in the sums of $725 and $750 respectively, for $497 and $514.50, and these amounts were credited upon the said judgment. It is conceded that no attempt was ever made to realize on the Cora Farman accommodation note.

Witness Paynter testified by deposition that when Mrs. Farman executed the $2500 note, witness said to her:

" 'Now, Mrs. Farman, you understand what you are doing here?'

"She says, 'Yes, I have a son in the banking business in California.'

"I says, 'There is no liability to this. This is a perfectly good loan,' and she signed the note."

On cross-examination Mr. Paynter testified that he examined the abstract of title and that it showed Frederick Harris, a single man, in 1906, conveyed the property to Mary Ann Harris; that he noticed the circumstance and also noticed that the deed of trust purported to have been executed by Frederick Harris and Mary Ann Harris, his wife. He was asked:

"Q. And you found that in 1904 a man named Elisha T. Estes, and wife, conveyed that property to Frederick Harris, is that right? A. Yes, sir.

"Q. Then you turned over a page or two and on page 103 the third page from the end of the abstract, you saw this deed here didn't you, from Frederick Harris, a single man, to Mary Ann Harris, dated July 9, 1906, in which Frederick Harris acknowledged himself to be a single man and unmarried? A. I did.

"Q. Then did you notice that this deed of trust which you were using as collateral security for one of these loans, this deed of trust is executed by Frederick Harris and Mary Ann Harris, his wife? A. Yes, sir.

"Q. Now, I want to know if it did not occur to you as peculiar that Frederick Harris, a single man, was conveying property to Mary Ann Harris and that after Frederick Harris and Mary Ann Harris, his wife, were executing a deed of trust on the property? A. Do you want to know what I thought? Here the notary said that Frederick Harris and Mary Ann Harris were husband and wife, and I concluded that somewhere back in 1904 or 1906, perhaps, that Frederick Harris and Mary Ann Harris had some contract agreement before marriage, and he deeded this property to her and they were afterwards married.

"Q. And that he married someone by the name of Harris? A. Yes, sir.

"Q. And you figured that Mr. Comstock was right and that this other notary public away back there in 1906 was wrong? A. Both could be right.

"Q. Then the only explanation you made of it was that her name was Harris before she was married and after she married? A. Absolutely.

"Q. And that to your mind was a sufficient explanation of that peculiar situation? A. It was."

At the close of plaintiff's testimony both defendant's offered demurrers to the evidence which the court overruled. Defendants thereupon introduced the testimony of defendant Comstock to show the circumstances surrounding the execution by him of the certificate in question. Both sides then rested. Defendants renewed their demurrers at the close of all the evidence and the same were overruled.

160

Defendants offered instruction ''C'' in their behalf as follows:

''The court instructs the jury at the end of all the evidence that under the law and the pleadings and the evidence the plaintiff is entitled to nominal damages only and your verdict must be against the defendants for nominal damages only. By nominal damages is meant the sum of one dollar.''

This instruction was refused. It appears that after the demurrers and instruction ''C'' had been argued, the court found that plaintiff had failed to prove what interest, if any, Frederick Harris had in the property in question, and, over the objection of defendants the court re-opened the case for the purpose of permitting plaintiff to supply the omission. This ruling is made the basis of a charge of error. However, such a charge is held to be without merit. It is said in Gross v. Watts, 206 Mo. 373, 391, 104 S. W. 30:

''The court has repeatedly held that evidence may be introduced after a case is closed and the judgment will not be reversed on that account unless it appears to the satisfaction of this court that the trial court abused its discretion in that regard, and that injury resulted as a consequence thereof to the complaining party. [Fullerton v. Fordyce, 144 Mo. 526; Waterworks Co. v. Joplin, 177 Mo. 531.]'' [See, also, Buck v. Trust Co., 267 Mo. 644, 185 S. W. 208; Crosby v. Evans, 281 Mo. 202, 219 S. W. 948.] We find that the court did not abuse its discretion and that defendants were not injured by this ruling. Therefore the question needs no further discussion.

It is urged the court erred in refusing defendants' instruction ''C'' which was in the nature of a directed verdict for plaintiff for nominal damages only. In support of this contention it is insisted that as relator recovered from the estate of Potts-Lasister Realty Company assets exceeding in value the amount of the loss resulting from the act of Comstock, said relator is bound to apply the same in mitigation of such damage. There is no dispute that the receiver of the Potts-Lasister Realty Company paid plaintiff amounts in excess of the claim against defendants herein and that plaintiff credited same on the judgment against Lasister, and that the amount of the judgment exceeded the sums so received and credited. The $2500 represented by the alleged bogus loan and deed of trust is comparable to a secured claim by virtue of Comstock's notarial bond, though technically speaking, it was not so secured. It is plaintiff's position that it was not obliged to credit these amounts upon the claim thus secured, in a manner, but that of right it could, and did, credit them on the judgment. We think this position is correct. This court held in the case of McMillan v. Grayston, 83 Mo. App. 425, 432:

''. . . that where a debtor is indebted on several accounts, some of which are secured and others not, or where the security of some is precarious, and he makes payments, if neither the debtor nor creditor have made application of the payments, the court will apply them in

the first instance to the debts which are not secured or of which the security is the most precarious.''

So it was held in Price v. Merritt, 55 Mo. App. 640, 645: ''Payments were made but no direction given by defendants for their application, nor were they at the time applied to either by plaintiff, he simply entering credit generally. Under these circumstances the trial court properly applied the credit to that portion of the account which was not lienable and for which there was no security. This is in keeping with an equitable principle which has frequently received the approbation of the courts in cases of this nature.''

In the case at bar no direction seems to have been given for the application of the money paid over by the receiver, and the rule followed in the case last cited applies. [30 Cyc. 1228, 1242, 1243. See, also, Gantner v. Kemper, 58 Mo. 567; Insurance Co. v. Rodger, 191 S. W. 1066.] Under the authorities we hold relator had the right to apply, as it did, all of the proceeds to the payment of the unsecured debts.

It is also urged in this connection that Mrs. Farman was liable for the debt which is claimed to constitute plaintiff's damages, as an accommodation maker, that plaintiff failed to show it had exhausted its remedies against her and that she was insolvent; that such a showing was necessary before plaintiff can recover from defendants. In support of this view defendants cite numerous cases but on examination we find them to differ from the facts here presented. Plaintiff's undisputed evidence shows that Mrs. Farman signed the $2500 note for the accommodation of the bank and not to accommodate Lasister. The testimony of Paynter, president of the bank, was to the effect that the reason for getting Mrs. Farman to execute the note was to relieve the bank from the situation it was under in having exceeded the loan limit to Lasister; that he, Paynter, induced her to sign the note on his assurance that it was done for the accommodation of the bank and she would not be liable thereon. There was no consideration passing.

The general rule applying to such situation is found in 8 C. J. 259, 260, as follows:

''The party for whose benefit accommodation paper has been made acquires no rights against the accommodation party who may set up the want of consideration as a defense to an action by the accommodated party, since as between them there is no consideration, a fact which is always a defense to a suit on negotiable paper between the immediate parties. He is not liable to the party accommodated, although he also signed for the accommodation of another party, or although a comaker received value from the party accommodated, or although he signed for the accommodation of two other parties and a valuable consideration passed between the parties accommodated.

If an acceptance is for the accommodation of the payee, the acceptor will not be liable to him.''

We followed this rule in Bank v. Yager, 288 S. W. 954, 956, saying:

''There is no question but that if the evidence introduced on the part of defendant is true the note was signed by her as an accommodation for the bank, and it is always competent to show a lack of consideration as between the accommodating person and the person accommodated.''

We therefore hold against defendants on this point.

It is also urged plaintiff failed to allege, or prove, the value of the real estate purporting to have secured the deed of trust, or to prove it was equal in value to the amount plaintiff seeks to recover. In support of this contention defendants cite the case of Governor of Wis. ex rel. v. Casualty Co., 213 N. W. 287, 288. It is true the petition does not allege in specific words the value of the real estate, but it does allege plaintiff was damaged in the amount of the loan made, to-wit, $2500. No objection was made to the petition at the trial except to the introduction of evidence thereunder—a method of attacking a petition which is not looked upon with favor. The record does not bear out defendants' assertion that there was no proof of the value of the property. Paynter, the president of plaintiff bank, testified that the property was worth $6500; witness Harris valued it at $10,000. It may not be successfully contended therefore that there was no proof of the value of the property.

It is also urged that since the evidence shows that no such person as Mary Ann Harris existed at the time of the alleged forgery, and that Frederick Harris had only a one-seventh interest in the property, the persons whose signatures are claimed to have been forged could not have conveyed title in any event, the deduction being that if the record owner of the land be dead at the time of the fraudulent impersonation, there can be no recovery by the defrauded lender. In the case of State ex rel. v. Packard, 199 Mo. App. 53, 201 S. W. 953, this court said:

''The notary's certificate can in no wise be deemed to certify to the ownership of, or title to, the property described in the instrument acknowledged, nor can anyone rely upon the certificate of acknowledgment as evidence of such title.''

The case at bar is not an instance where the one falsely impersonated had no title to the land, as was the fact in State ex rel. v. Plass, 58 Mo. App. 148. Under the holding of State ex rel. v. Ogden, 187 Mo. App. 47, 48, 172 S. W. 1172, and cases therein cited, we rule against defendants on this point.

It is strenuously urged that the discoveries made by Paynter in examining the abstract of title to the property were such as to have induced an investigation, in the exercise of ordinary care, and such investigation would have brought to light the character of the secur-

ity offered; and that plaintiff was guilty of contributory negligence in failing to make such investigation and therefore may not recover. This charge is based upon the fact that the deed from Frederick Harris to Mary Ann Harris did not disclose the relationship of brother and sister. It is defendants' position that Paynter was guilty of contributory negligence as a matter of law because these facts did not suggest that Mary Ann Harris was the sister and not the wife of Frederick Harris. In explanation of this circumstance, Mr. Paynter testified as above set forth. The question of plaintiff's contributory negligence was for the jury and there was no error in refusing the peremptory instruction ''C.''

This court held in State ex rel. v. Otto, 276 S. W. 96, which was a suit against the principal and sureties on a notary's bond, as follows (1. c. 103):

''It was unnecessary, in order to make out a case, to show that the parties were deceived by solely relying upon the certificate of Otto, for, if they relied upon James's introduction, together with the certificate by Otto, or on any other circumstance, it was sufficient if the acknowledgment was one of the concurring and proximate causes of the loss.''

Defendants vigorously attack plaintiff's instruction P-1, charging that it is fatally defective in that it purports to cover the whole case, directs a verdict, and yet does not require a finding that the certificate was, in fact, false, as a condition of plaintiff's recovery. We are not impressed with this charge. It does not appear there was any dispute in the evidence as to the falsity of the notary's certificate, nor was there any controversy at the trial as to the fact that Mary Ann Harris was not living at the time the certificate was executed. It is true the instruction assumed the certificate was false in this language:

''. . . and if you further find that said sum was lost to said bank and that the false certificate of the defendant Comstock was the proximate cause of said loss . . .'' etc.

But, since the certificate was admittedly false in that Mary Ann Harris, the record owner of the property was dead at the time the certificate was made, it would have been useless to require the jury so to find. The law does not require the doing of useless things. The established rule is that undisputed facts in evidence which are not susceptible of different interpretations need not be submitted to the jury. This rule was declared in State ex rel. v. Otto, 276 S. W. 96, 104, where it is said of a certain instruction:

''It starts out by saying that it was admitted that the acknowledgment was a false certificate, in that the persons appearing before the notary were not the real Marshalls; that it was admitted that the persons appearing before the notary were not personally known to the notary, and were not proved to the notary by at least two wit-

nesses to be the real Marshalls, etc. Otto himself admitted these facts, and they are nowhere in the record denied, and it was not error to assume them in the instruction.''

What we have said also disposes of defendant's contention that instruction P-1 was erroneous because it did not require the jury to find the value of the property purporting to secure the indebtedness. There was no conflict in the evidence on this point.

It is also charged plaintiff's instruction No. 2 was erroneous because it tells the jury that Mrs. Farman was not liable as an accommodation maker of the note. The instruction properly declares the law in this respect as we have already indicated. There was no error in this respect.

Defendants urge that the court erred in refusing their instruction D-5, which sought to instruct on the question of contributory negligence and the direct and proximate cause of the alleged loss. This instruction was too general. It was not confined to the alleged contributory negligence pleaded and shown in the testimony, a necessary requirement, as included in instruction P-1.

Finally it is urged the form of the judgment rendered was insufficient. The material part of the judgment to which this charge is applied is as follows:

''Wherefore, it is ordered, adjudged and decreed by the court that the plaintiff have and recover of and from said defendant, the sum of one thousand nine hundred ninety-seven and 83/100 ($1997.83) dollars, the damages aforesaid as assessed by the jury with interest thereon until paid at the rate of six (6%) per cent per annum, together with all costs herein and have therefor execution and to the action of the court in so receiving said verdict and in so entering said judgment thereon, the defendants then and there duly objected and excepted and still except.''

It is argued that the obvious defect in the judgment is that it was not rendered for the full penalty of the bond, but is an ordinary judgment for damages in the sum of $1997.83.

Defendants cite an opinion by this court in the case of Franklin v. Holliway, 203 S. W. 664, where there was no judgment rendered for the penalty of the bond and the only judgment of record was for the amount of the damages. The judgment was reversed and the cause remanded with directions to enter the proper judgment and the costs of the appeal taxed against the plaintiff. We have no fault to find with the Franklin case but in the case at bar the form of the judgment was not specifically attacked either in the motion for a new trial or the motion in arrest. At most, the judgment may be charged with irregularity and cannot be attacked for the first time in this court, under the circumstances. [Kamerick v. Castleman, 29 Mo. App. 658,

665; Clark v. Porter, 90 Mo. App. 143.] The verdict and judgment were for the right party and in strict conformity with the instruction of the court. The judgment is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.