## Aetna Casualty & Surety Company v. Commonwealth For Use of Andres.

(Decided February 18, 1930.)

HUMPHREY, CRAWFORD & MIDDLETON for appellant.

HUBBARD & HUBBARD for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

A. R. Schoffner was a notary public for Jefferson county, Ky., and the Ætna Casualty & Surety Company was surety on his official bond. In an action predicated upon the negligence and fraud of the notary, a judgment was rendered against the surety. It has prosecuted this appeal, insisting that it is not liable, because the fraudulent act of the notary public was not done in his official capacity, but as a real estate agent, and that the certificate of the officer was not the proximate cause of the damage. The terms of the bond followed the language of the statute (section 3721, subsec. 4), to the effect that the notary should "well and properly discharge all the duties of said office as required by law." Shoffner was associated with H. B. Earl in a real estate agency. In the capacity of real estate agents they negotiated a transaction between Caroline Andres and Margaret Ewing. Mrs. Ewing valued her property at $2,500, and authorized the agents to sell it for that price on terms of $750 cash and the balance in monthly payments of $25 each. Mrs. Andres was induced by the real estate agents to offer for the property of Mrs. Ewing $1,000 in cash and $1,750 in deferred payments of $25 each, payable monthly, and also her farm in Indiana, valued at $1,600. The total amount of the offer was $4,350, or $1,850 more than Mrs.

Ewing asked for her property. Neither Mrs. Andres nor Mrs. Ewing knew anything about the fraud of the real estate agents. Each paid them a commission on the trade. The agents concealed the facts from both parties, and prevented them from meeting during the negotiations. The notes of Mrs. Andres for $1,750 were delivered to Mrs. Ewing and she was paid $750 of the cash, for which she conveyed her property to Mrs. Andres. The agents kept $250 of the cash payment in addition to the commissions collected. Shoffner prepared a deed conveying the farm of Mrs. Andres, but named no grantee therein. He procured her to sign and acknowledge the blank deed before him as a notary public, and certified the acknowledgement. Mrs. Andres was not advised that the deed was in blank. She could not read or write, but signed the deed by mark. She supposed the farm was going to Mrs. Ewing as a part of the purchase price for her property. Shoffner, of course, was fully advised of the fraud. He gave the deed to his partner, who caused the name of Elwood M. Earl, father of H. B. Earl, to be filled in as grantee, and the Indiana farm was then sold to innocent purchasers.

The instrument, as executed and acknowledged by Mrs. Andres, was not a deed to Elwood M. Earl. It was void for lack of a grantee. Huntsman v. Bryant, 196 Ky. 312, 244 S. W. 701. But, when the notary delivered it to Earl and permitted the name of a grantee to be inserted therein, the notarial certificate was false, and, by reason thereof, the property was sold to an innocent purchaser, which wrongfully deprived Mrs. Andres of her land. 18 C. J. 176; Allen v. Withrow, 110 U. S. 119, 3 S. Ct. 517, 28 L. Ed. 90. It is insisted that the surety in the bond of the notary public is not liable because the wrongful act of the officer was not the proximate cause of the loss sustained by the plaintiff A notary public is liable on his official bond, for wrongful official acts resulting in loss or injury. It is not necessary that the wrongful act of the notary shall be the sole cause of the loss. If it is a concurring cause and plays a part in bringing about the injury, the liability for the loss is fixed. 46 C. J. 526, Sec. 43; State v. Otto, 220 Mo. App. 429, 276 S. W. 96; State v. American Surety Co. (Mo. App.) 254 S. W. 561: State v. Ogden, 187 Mo. App. 39, 172 S. W. 1172; Blaes v. Commonwealth, 96 S. W. 802, 29 Ky. Law Rep.

908; Lacour v. National Surety Co., 147 La. 586, 85 So. 600, 18 A. L. R. 1295; Howcott v. Talen, 133 La. 845, 63 So. 376, 49 L. R. A. (N. S.) 45; Rochereau v. Jones, 29 La. Ann. 82.

The certificate of the notary in this case was essentially false. The grantor did not sign or acknowledge a deed to Elwood M. Earl, but the notary uttered a certificate to that effect. By reason of that certificate, in part at least, the title of Mrs. Andres was divested, and her property was lost. State, etc., v. American Surety Co. (Mo. App.) 254 S. W. 561. It is argued that the deed was signed by mark in the presence of two witnesses, and the fraud could have been perpetrated without the notary's certificate. But that was not the course of conduct followed by the perpetrators of the fraud. The notary public acted officially, attached his certificate to the instrument, and thereby helped to deprive Mrs. Andres of the title to her farm. If such had not been the case, and Mrs. Andres could have recovered her farm, the notary public would not have been liable to her, although he might have been liable to any person that bought the farm and lost it by reason of the false certificate. The official act of the notary, coupled with his other acts, effectually divested the title of Mrs. Andres, and thereby inflicted a loss upon her.

The cases relied upon by the appellant are essentially different and easily distinguished. In People v. Nederlander, 177 Mich. 434, 143 N. W. 753, Ann. Cas. 1915C, 1026, the certificate of the notary played no part in the accomplishment of the fraud. The fraud had been completed before the notary's certificate was made, and the notary's certificate was ineffective to divest the title of the real owner. Plainly, therefore, the loss sustained by the purchaser in failing to get title to the property was not caused by the official act of the notary. In Ellis v. Hale, 58 Mont. 181, 194 P. 155, it was held that, while a notary and his surety were liable for damages sustained by a third party through the official misconduct or negligence of the officer, the facts of that case showed the loss was caused by the fraudulent act of the agent, unaffected and unaided by the certificate of the notary public. No title was divested, and the person who parted with the money sent a check to the notary, who forged the indorsement and kept the proceeds. In Riverside Portland

Cement Co. v. Maryland Casualty Co., 46 Cal. App. 87, 189 P. 808, the notary certified the acknowledgment of sureties to an application for a contractor's bond. The contractors failed to pay for cement purchased, and it was then discovered that the contractors and their sureties were insolvent. The action was brought upon the notary's bond on the ground of negligence in taking the acknowledgment of the sureties, and the court held that the default of the notary was not a proximate cause of the loss. In Governor of Wisconsin v. Maryland Casualty Co., 192 Wis. 472, 213 N. W. 287, 51 A. L. R. 1478, a real estate agent was authorized to make an investment. The agent produced a mortgage certified by himself as notary public, and the money was paid to him and converted to his own use. The signature to the mortgage was a forgery, and the property described did not exist. The court held that the loss was not the proximate result of the false certificate, since the property was nonexistant, and the mortgage, if genuine, would have afforded no security. The soundness of that decision may well be doubted. Compare State v. Hallen (Mo. App.) 196 S. W. 1067. On the other hand, in Doran v. Butler, 74 Mich. 643, 42 N. W. 273, it was held that, where a notary public forged a note and mortgage and falsely certified to an acknowledgment of a mortgage by the grantors named therein, and received the money loaned thereon, which was lost to the lender, the misconduct of the notary in his official capacity was a proximate cause of the loss, and the surety on his bond was liable. See, also, Peterson v. Mahon, 27 N. D. 92, 145 N. W. 596.

The principle running through the authorities is the same. The divergence arises in its application to the particular facts of the different cases. Where a notary is called on to perform an act which he is authorized by law to perform, and he does so carelessly or fraudulently, he and his surety are liable for any loss proximately resulting therefrom. 20 R. C. L. Sec. 17, p. 335. A notary public is not an insurer, but he is under a duty to his clients to act honestly, skillfully and with reasonable diligence. 46 C. J. p. 524, Sec. 38; Com. etc., v. Johnson, 123 Ky. 437, 96 S. W. 801, 29 Ky. Law Rep. 897, 124 Am. St. Rep. 368, 13 Ann. Cas. 716; Samuels v. Brand, 119 Ky. 13, 82 S. W. 977, 26 Ky. Law Rep. 943; Clapp v. Miller, 89 Okl. 38, 213 P. 854. He owes, especially to

illiterate persons, counsel and advice, and must explain to persons not advised the effect of the instrument to be executed. If the officer knows important facts concerning the matter in hand, and further knows that his client is ignorant concerning them, he is in duty bound to disclose them. 46 C. J. p. 526, Sec. 41. It is argued that an officer is not liable on a bond for the faithful performance of his duties unless he is acting in his official capacity. Taylor v. Shields et al., 183 Ky. 669, 210 S. W. 168, 3 A. L. R. 1619; Young v. Amis, 220 Ky. 484, 295 S. W. 431. It is quite true that, when an officer undertakes to perform some act not authorized by law, his surety is not liable, even though he pretended to act as an official; but, when an officer performs an act which he is authorized by law to perform, which is within his official duties, and which results in injury to anther, he is liable. 20 R. C. L. p. 335; 46 C. J. Sec. 43, p. 527; Clapp v. Miller, 89 Okl. 38, 213 p. 854; Cf. Saevoff v. Steffen, 123 Wash. 225, 212 p. 158, 31 A. L. R. 918, annotation, 920.

In this case the notary took and certified an acknowledgment to a void deed, knowing that it was void, and knowing that the grantor would not sign or acknowledge the deed if advised of the facts known to the officer. It caused a loss to the grantor in depriving her of the farm. The fact that the fraud of the notary in his capacity as real estate agent operated concurrently with his official act did not defeat the liability on the official bond. The very act of the notary public in his official capacity was an essential factor in divesting the title to the land, and it enabled the real estate agents to consummate the fraud. The act was plainly a breach of the covenant in the bond that the notary would well and properly discharge his duties. The duty of the officer is owed to any one who may employ him officially, and undoubtedly Mrs. Andres was within the purpose, purview, and protection of the bond. 46 C. J. p. 528; Lacour v. National Surety Co., 147 La. 586, 85 So. 600, 18 A. L. R. 1295. It is clear that the injury to Mrs. Andres proximately resulted from the breach of duty owed her by the officer, and the court did not err in holding the surety in his bond liable for her loss.

It is complained that incompetent evidence was admitted. The trial court permitted several witnesses who were experienced notaries to testify, in substance,

148

that they would not take an acknowledgment to a deed in which no grantee was named. The record presents no question concerning the liability of a notary who innocently certifies an acknowledgment without an examination of the instrument, or without knowledge of its contents. In this case the notary wrote the deed, knew that it named no grantee, and concealed from the grantor facts within the knowledge of the officer, which, if disclosed, would have defeated the fraud. A custom among notaries may or may not be admissible as excusing a negligent act, but the absence or existence of a custom could not be established by the testimony of particular notaries as to their individual practices. 17 C. J. Sec. 93, p. 525. The testimony should have been excluded, but it is plain that it was not prejudicial to appellant. The vital question to be determined was whether the fraudulent act of the notary public was within the terms of his official bond, and whether the injury to plaintiff proximately resulted therefrom. We entertain no doubt that upon these questions the lower court ruled correctly. The erroneous ruling regarding the admission of immaterial evidence is insufficient to warrant a reversal of the judgment. Civil Code Prac. Sec. 756; Louisville Ry. Co. v. Sweeney, 157 Ky. 620, 163 S. W. 739; Louisville & N. R. Co. v. Rowland's Adm'rs, 227 Ky. 841, 14 S. W. (2d) 174.

The judgment is affirmed.

Whole court sitting.