(132 So. 317)

**FOGLEMAN et al. v. NATIONAL SURETY CO. et al.**

**CHATFIELD et al. v. ÆTNA CASUALTY & SURETY CO.**

3 Div. 925.

Supreme Court of Alabama.

Jan. 22, 1931.

Hill, Hill, Whiting, Thomas & Rives, of Montgomery, for appellants.

Ball & Ball and Steiner, Crum & Weil, all of Montgomery, for appellees.

**FOSTER, J.**

■■ In our recent case of Ex parte Green, 221 Ala. 415, 129 So. 69, we had before us for review by mandamus the propriety of an order consolidating suits in equity. We there approved that method of review, and referred to the fact that no appeal is provided from such an order. The order of consolidation in this case is a part of a decree sustaining demurrers to the several bills of complaint, and it is to that extent assigned as error. This court has held that a decree from which no appeal may be taken because the time has expired may not be assigned as error on an appeal taken from another interlocutory decree, which will support an appeal, Kyser v. American Surety Co., 213 Ala. 614, 105 So. 689; Lewis v. Martin, 210 Ala. 401, 98 So. 635 (9); though it may be assigned for error on appeal from the final decree, section 6079, Code. For like reason, if no provision is made by law for an appeal from an interlocutory decree, such decree may not be assigned for error on an appeal from another interlocutory decree. We cannot therefore consider such assignment of error, and express no opinion on the propriety of the order of consolidation. But, in this connection, we refer to our case of Ex parte Green, supra, and 1 Corpus Juris, 1128.

The equity of the bills of complaint separately considered is that complainants in each of them and others similarly situated have sustained loss as the proximate result of the breach by J. E. Duskin, Jr., of his successive official bonds as a notary public, in excess of the penalty of the respective bonds, and seek to have the court ascertain the amount due each, and prorate the amount of the liability on each bond among them pursuant to the amount of the loss each has sustained.

This aspect of the equity of the bills is not questioned by appellees, and is supported by our case of National Surety Co. v. Graves, 211 Ala. 533, 101 So. 190. But the contention is that the allegations of the bills do not show any liability against the sureties on the bonds for the breach of a duty imposed by law or its terms. This view was entertained by the circuit court, and it is the principal question argued in this Court.

In our case of American Surety Co. v. First Nat. Bank, 203 Ala. 179, 82 So. 429, 430, there is asserted principles which are supported by the great weight of authority to the effect that, when the claim is that plaintiff has sustained damages as the proximate result of the fraudulent act of a notary public in falsely certifying an acknowledgment to a mortgage whose execution he had also forged, the true inquiry should be: "Is the plaintiff in this case connected with such official act of making a false certificate of acknowledgment to the mortgage, by estate or interest, as to bring it within the protection of the statute? [Section 2612, Code]. If not, then, of course, it cannot maintain this action; if so, it can." In that case the notary had sent to one bank the check of the mortgagee payable to the fictitious mortgagor on another bank, with a forged indorsement, and procured the former bank to indorse it for collection from the payee bank, and thereby caused a loss by the former bank on account of the forged and fictitious indorsement. It was held that the proximate cause of such loss to the bank was the act of this notary as an individual and not an officer in forging the indorsement on the check inducing the bank to act upon it. The bank was in no way connected with the official conduct of the notary, and its loss was not the proximate, but the remote, result of such official misconduct. Of a similar nature is the recent case of State ex rel. v. Globe Indemnity Co., 220 Mo. App. 918, 9 S.W.(2d) 668.

There is nothing we observe here which would militate against the contention that, if the mortgagee parted with funds as the direct and proximate result of such fraudulent official conduct, he could recover on the bond. In fact the opinion shows that such is the true rule. Since that opinion was written the subject has been treated in three separate annotations in A. L. R. supplementing each other, as follows: 18 A. L. R. 1304; 31 A. L. R. 920; 61 A. L. R. 808. Some of the cases cited are noted below, and they are generally to the effect that, where the mortgagee pays out his money upon the faith of the truth of the certificate and sustains loss, the loss is the proximate result of the act of the notary

268

done under color of his office. State ex rel. v. Ogden, 187 Mo. App. 39, 172 S. W. 1172; People, etc., v. Butler, 74 Mich. 643, 42 N. W. 273; State ex rel. v. Am. Surety Co. (Mo. App.) 254 S. W. 561; State ex rel. v. Korte (Mo. App.) 13 S.W.(2d) 558; Governor of Wisconsin ex rel. v. Maryland Casualty Co., 192 Wis. 472, 213 N. W. 287, 51 A. L. R. 1478; State ex rel. v. Globe Indemnity Co., 222 Mo. App. 153, 2 S.W.(2d) 815; State ex rel. v. Otto, 220 Mo. App. 429, 276 S. W. 96; Ætna Cas. Co. v. Commonwealth, 233 Ky. 142, 25 S.W.(2d) 51. Many others are shown in the annotations above.

Undoubtedly the loss must be the proximate result of the official misconduct of the officer to create a liability against his official bond. The authorities all agree on this point. But there is a supposed conflict among them as to the effect and meaning of that conclusion.

The case of Governor of Wis. v. Maryland Casualty Co., 192 Wis. 472, 213 N. W. 287, 289, 51 A. L. R. 1478, has emphasized the idea that such proximate result cannot include the consequences of the personal conduct of the officer. So that, had the mortgage been properly acknowledged as certified, it would not have furnished adequate security, and "a true certificate would not have saved the plaintiff from her loss," "the plaintiff is not entitled to recover any more than her loss, by reason of said certificates being false instead of true," and "if the mortgages had been valid in every respect their value as securities would have depended upon the value of the mortgaged property,"—citing Heidt v. Minor, 89 Cal. 115, 26 P. 627, 629; McAllister v. Clement, 75 Cal. 182, 16 P. 775.

Whereas it is claimed that the reasoning in another line of cases leads to a different result. Their argument follows from the well-understood principle which declares that the false certificate need only be one of the proximate contributing causes of a result to create a liability for that result. It is argued, therefore, that, if the result is caused by the concurring causes of the individual misconduct of the officer in presenting to the mortgagee a mortgage on worthless property, or on some not in existence or not owned by the mortgagor, and the official misconduct of the officer in falsely certifying to an acknowledgment of the mortgagors, the total loss may be recovered, though due to such combined causes. State v. Hallen (Mo. App.) 196 S. W. 1067; State v. Otto, 220 Mo. App. 429, 276 S. W. 96; State v. Ogden, 187 Mo. App. 39, 172 S. W. 1172; State v. Am. Surety Co. (Mo. App.) 254 S. W. 561. To sustain this conclusion, it is argued in one of the cases that the false certificate was one of the conditions on which reliance is placed, and without it there would have been no loss.

But we think that we can accept the theory that, if reliance on the false certificate is one of the proximate contributing causes, a recovery may be had without going the full length of some of the cases last cited, in finding the result of that theory. For there is another well-settled rule pertaining to the measure of damages resulting from fraudulent conduct or representations, to the effect that such damages will be fixed by an amount which would place the defrauded person in the position he would occupy if the representations had been true. So that, if the mortgagee would have received no security for his debt had the certificate spoken the truth, either because of the worthless nature of the property, or its defective title in the mortgagor, the loss occasioned by such conditions could not be said to have been produced even in part by the false certificate. This is the result reached in the Wisconsin case, supra. Governor of Wisconsin v. Maryland Cas. Co. In the case of Bank of Mobile v. Marston, 7 Ala. 108, this principle was applied to facts of a somewhat similar nature. 46 Corpus Juris, 528.

The cases cited above which seem to lead to a different conclusion are Missouri cases. Whereas a later Missouri case, State v. Korte (Mo. App.) 13 S.W.(2d) 558, 559, upon the basis of a long list of authorities, asserts as a settled conclusion that the measure of damages under such circumstances is "the value of the security which the mortgagee would have received had the mortgage been valid, not exceeding the amount loaned and interest." This conclusion of the Missouri court shows that it does not understand that the reasoning of the earlier cases cited above should lead to a different result.

In the case of Ætna Casualty Co. v. Commonwealth, 233 Ky. 142, 25 S.W.(2d) 51, the false certificate was to a deed executed by the grantor who was deceived by the officer, and who sued the officer and his bond. Such certificate was one of the causes that proximately contributed to the loss of the property by the grantor. In that case the officer took and certified an acknowledgment to a void deed knowing it was void, and the suit was by the grantor. It was not a question there of the measure of her damage, for she lost her property because of the official misconduct of the officer as one of the causes. It was not a question of making good a false certificate or representation as with mortgages, such as we are considering.

We think, therefore, that there is no real conflict in the principles stated. For the false certificate need not be the sole proximate cause of a loss to justify a recovery. But when one is induced to action by fraudulent representation, the amount of the proximate loss is only that which would be sufficient to place the defrauded party in the

position he would occupy if the false representation were true.

We are led to the conclusion that the meat of the controversy only affects the extent of the recovery, whether nominal or substantial, and, if substantial, the true amount.

The bills of complaint allege such fraudulent official misconduct by representing the due acknowledgement of the mortgages, when that was false, and that complainants relied upon the representation and thereby sustained a loss. If they did not sustain such loss by reason of such false acknowledgment, but would have done so though the acknowledgment were true, the damage would be nominal. But that is a matter of proof, and it does not render the bill defective.

The decree sustaining the demurrer is therefore reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.